UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 22-3128 _____          _____ Caption [use short title] _____

Motion for: stay of preliminary injunction pending appeal

_____

_____

Set forth below precise, complete statement of relief sought:

Defendants-Appellants respectfully request a stay

pending appeal of a preliminary injunction that indefinitely          Variscite NY One, Inc. v. State of New York

halts issuance of conditional cannabis dispensary licenses

in 5 of 14 regions of New York. In the alternative, defendants-

appellants request the injunction be narrowed to only apply

to the Finger Lakes region of New York.

MOVING PARTY: State of New York, NY State Office of Cannabis Management, Christopher Alexander          OPPOSING PARTY: Variscite NY One, Inc.

☐ Plaintiff          ☑ Defendant

☑ Appellant/Petitioner          ☐ Appellee/Respondent

MOVING ATTORNEY: Alexandria Twinem          OPPOSING ATTORNEY: Christian Kernkamp, Esq.

[name of attorney, with firm, address, phone number and e-mail]

NY State Office of the Attorney General          Kernkamp Law, APC

The Capitol, Albany NY 12224          1801 Century Park East, 24th Floor, Los Angeles, CA 90067

518-776-2042; Alexandria.Twinem@ag.ny.gov          213-214-3030; ck@kernkamplaw.com

Court- Judge/ Agency appealed from: U.S. District Court for the Northern District of New York (Hon. Gary L. Sharpe)

Please check appropriate boxes:                                   **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):          Has this request for relief been made below?  ☑ Yes ☐ No
☑ Yes ☐ No (explain):_____          Has this relief been previously sought in this court?  ☐ Yes ☑ No
_____          Requested return date and explanation of emergency:
                                                                          Appellants request oral arguments and a decision on the stay motion as soon as practicable
Opposing counsel's position on motion:                                   thereafter.
☐ Unopposed ☑ Opposed ☐ Don't Know          _____
Does opposing counsel intend to file a response:          _____
☑ Yes ☐ No ☐ Don't Know          _____

Is oral argument on motion requested?  ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No If yes, enter date:_____

Signature of Moving Attorney:

/s/ Alexandria Twinem_____ Date: 2/16/23_____ Service by: ☑ CM/ECF ☐ Other [Attach proof of service]

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

VARISCITE NY ONE, INC.,

*Plaintiff-Appellee,*

v.

No. 22-3128

STATE OF NEW YORK, NEW YORK STATE OFFICE OF
CANNABIS MANAGEMENT, CHRISTOPHER ALEXANDER,

*Defendants-Appellants.*

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellants
The Capitol
BARBARA D. UNDERWOOD        Albany, New York 12224
  *Solicitor General*        (518) 776-2015
JEFFREY W. LANG
  *Deputy Solicitor General*   Dated: February 16, 2023
ALEXANDRIA TWINEM
  *Assistant Solicitor General*
    *of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................. 3

    A.   New York's Cannabis Laws and Regulations........................... 3

    B.   Plaintiff's Application ................................................................ 7

    C.   The District Court Grants a Preliminary Injunction and Declines to Narrow the Injunction............................................ 9

ARGUMENT

POINT I

    THE DISTRICT COURT'S PRELIMINARY INJUNCTION SHOULD BE STAYED PENDING APPEAL........................................................ 12

    A.   Defendants Are Likely to Succeed on Their Appeal. ............. 12

        1.   Plaintiff lacks standing to challenge the license requirements; alternatively, its challenge is moot to the extent it asserts a denial of an opportunity to compete for a license. ....................................................... 13

        2.   The justice-involved requirement does not violate the dormant Commerce Clause. ...................................... 18

    B.   Equitable Factors Support a Stay.......................................... 23

i

**Page**

POINT II

IN THE ALTERNATIVE, ANY INJUNCTIVE RELIEF SHOULD BE
NARROWED PENDING APPEAL.................................................................. 26

CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

CASES                                                                 PAGE(S)

*Alexander v. Yale Univ.*,
   631 F.2d 178 (2d Cir. 1980) ................................................................ 18

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) ........................................................................... 28

*Brown & Williamson Tobacco Corp. v. Pataki*,
   320 F.3d 200 (2d Cir. 2003) ............................................................... 17

*Cacchillo v. Insmed, Inc.*,
   638 F.3d 401 (2d Cir. 2011) ............................................................... 13

*Conn. Citizens Def. League, Inc. v. Lamont*,
   6 F.4th 439 (2d Cir. 2021) .................................................................. 14

*Hassoun v. Searls*,
   968 F.3d 190 (2d Cir. 2020) ............................................................... 12

*Ne. Fla. Chapter of Associated Gen. Contrs. of Am. v. City of
   Jacksonville*,
   508 U.S. 656 (1993) ........................................................................... 17

*Ne. Patients Grp. v. Utd. Cannabis Patients & Caregivers*,
   45 F. 4th 542 (1st Cir. 2022) .............................................................. 21

*NPG, LLC v. City of Portland*,
   2020 WL 4741913 (D. Me. Aug. 14, 2020) ........................................ 21

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ........................................................................... 19

*Romer v. Green Point Sav. Bank*,
   27 F.3d 12 (2d Cir. 1994) ................................................................... 23

*Shapiro v. Cadman Towers, Inc.*,
   51 F.3d 328 (2d Cir. 1995) ................................................................. 25

iii

CASES (cont'd)                                                    PAGE(S)

*SM Kids, LLC v. Google LLC,*
    963 F.3d 206 (2d Cir. 2020) ................................................. 13

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas,*
    139 S. Ct. 2449 (2019) ......................................................... 19

*Thapa v. Gonzales,*
    460 F.3d 323 (2d Cir. 2006) ................................................. 12

*Town of Southold v. Town of E. Hampton,*
    477 F.3d 38 (2d Cir. 2007) ..................................... 19, 21, 22

*Trump v. Int'l Refugee Assistance Project,*
    137 S. Ct. 2080 (2017) ......................................................... 26

*United States v. Smith,*
    945 F.3d 729 (2d Cir. 2019) ................................................. 14

*Variscite NY One, Inc. v. State of New York,*
    No. 22-cv-1013 (N.D.N.Y. 2023) ........................................... 4

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,*
    549 F.3d 100 (2d Cir. 2008) ................................................. 13

## CONSTITUTIONAL PROVISIONS

U.S. Const.
    art. I, § 8, cl. 3 ................................................................. 19

## STATE STATUTES

N.Y. Cannabis Law
    § 2.......................................................... 1, 3, 4, 22
    § 3............................................................................. 4
    § 8............................................................................. 4
    §§ 61-89 .................................................................... 4

iv

**STATE REGULATIONS**                                        **PAGE(S)**

N.Y. Comp. Codes R. & Regs. tit. 9
  § 116.4.................................................................................passim

## PRELIMINARY STATEMENT

In 2021, New York passed the Marihuana Regulation and Taxation Act in response to findings that its existing laws criminalizing marihuana had "resulted in devastating collateral consequences including mass incarceration" and inhibited otherwise law-abiding individuals' "ability to access housing, employment opportunities, and other vital services." N.Y. Cannabis Law ("N.Y. Canbs.") § 2. The Act legalizes adult cannabis use and regulates who may grow, manufacture, and sell cannabis in the State. New York intends the benefits from this new industry to flow first to people most injured by the State's prior marihuana criminalization. *Id.* So the State offered a first round of 150 licenses for the sale of cannabis to businesses that (1) have a significant presence in New York, and (2) are owned by individuals affected by marihuana-related convictions under New York law.

Plaintiff Variscite NY One, Inc. is a business incorporated in New York and majority-owned by someone convicted of marihuana use in Michigan. It argues that New York's license requirements unconstitutionally discriminate against out-of-state actors. The District Court for the Northern District of New York (Sharpe, J.) agreed, granting plaintiff

a preliminary injunction prohibiting issuance of dispensary licenses in five out of 14 regions of the State.

A stay pending appeal is warranted because reversal on appeal is likely, and the balance of equities favors defendants. Plaintiff Variscite lacks standing to challenge either requirement: it satisfies the significant presence requirement, and it would not qualify for a license even absent the challenged requirements. The claim fails not only for lack of standing, but also on the merits: New York's requirement of a marihuana conviction is consistent with the dormant Commerce Clause. The requirement does not discriminate against out-of-state economic actors, and any incidental burden it imposes on interstate commerce does not exceed the State's interest in rectifying the harm caused by its prior laws criminalizing marihuana and the selective enforcement of those laws.

In addition, the State and its residents will suffer irreparable harm absent a stay. The preliminary injunction leaves the putative recipients of 54 dispensary licenses indefinitely unable to do business and threatens the economic stability of cannabis growers and manufacturers who will, as a result of the injunction, lack enough buyers for their goods. By

contrast, the preliminary injunction does not benefit plaintiff, who will be denied a license absent the challenged regulations, and in any event could later be compensated by money damages.

Finally, and alternatively, the injunction should at least be narrowed pending appeal to enjoin issuing licenses only in the Finger Lakes region of the State, which is the lone region in which plaintiff could be licensed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   New York's Cannabis Laws and Regulations

In 2021, the New York Legislature concluded that the State's existing laws criminalizing marihuana use had "not been beneficial to the welfare of the general public." N.Y. Canbs. § 2. The Legislature explained that New York's marihuana criminalization had "resulted in devastating collateral consequences including mass incarceration and other complex generational trauma, that inhibit an otherwise law-abiding citizen's ability to access housing, employment opportunities, and other vital services." *Id.* To correct these effects, the Legislature enacted the State's

Cannabis Law regulating adult-use cannabis and establishing the Office of Cannabis Management (OCM). *Id.* §§ 2, 8.

The Cannabis Law creates a system for licensing cultivators, processors, and retailers of adult-use cannabis. *See id.* §§ 3, 61-89. To implement that licensing system, OCM in turn promulgated the Conditional Adult-Use Retail Dispensary (CAURD) regulations and issued an application form based on these regulations to be used to license the first 150 dispensaries for adult-use cannabis in New York. *See* N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 9, § 116.4; *see also* Barbot Decl. ¶ 24, ECF No. 20[1]; CAURD FAQs, ECF No. 20-1; Barbot Supp. Decl. ¶ 6, ECF No. 29-1.

Under OCM's regulations, a for-profit business applying for a license was required to meet three threshold criteria. First, the applicant had to demonstrate a significant presence in New York (the "significant presence requirement"). To satisfy this requirement, an applicant could have a principal corporate place of business in the State, be incorporated

---

[1] All citations to "ECF No. __" refer to documents filed in *Variscite NY One, Inc. v. State of New York*, No. 22-cv-1013 (N.D.N.Y. 2023).

under State law, have a majority of its ownership reside in New York for at least half of the current year, or otherwise demonstrate a "significant presence."[2] 9 N.Y.C.R.R. § 116.4(a)(1). Second, the applicant had to demonstrate justice-involvement (the "justice-involved requirement"). To satisfy this requirement, one or more individuals owning the business must have been convicted of a marihuana-related offense, or have a close family member or caregiver convicted of a marihuana-related offense, under New York law prior to March 31, 2021. *Id.* § 116.4(a)(2)(i). Third, the business's owners had to have experience owning and running a business. *Id.* § 116.4(a)(2)(iii).

OCM also established the method by which it would assess applicants to determine which businesses received the limited number of available licenses. Applicants would be scored based on several factors: (1) the average household income of the census tract where the convicted individual lived at the time of their arrest as compared with other census

---

[2] OCM's subsequent guidance document explained that assets, real property, or a bank account in New York State would also constitute "significant presence." CAURD FAQs at 3-4.

tracts within the relevant county or region, with lower-income areas receiving a higher score (accounting for 40% of applicant's total score), (2) whether the owner of the applying business was the individual convicted or was a relative of the individual convicted (15% of the applicant's total score), and (3) the nature of the qualifying business, including the owners' previous experience operating a business with physical locations, whether the business had been denied a bank loan, whether the business had uncleared tax liens, and the business's overall capacity (altogether 45% of the applicant's total score). Barbot Supp. Decl. ¶¶ 18-22; *see also* 9 N.Y.C.R.R. § 116.4(c). Applicants could be awarded up to 100 points total. *See* Barbot Supp. Decl. ¶¶ 23-24; *see also* Variscite Scoresheet, ECF No. 29-3.

OCM divided the state into 14 geographic regions, each with a specified number of licenses available. *See* CAURD FAQs at 16. Each applicant was asked to indicate its top five preferred regions. OCM would consider assigning an applicant to a region other than its top choice only if there were insufficient applications for one of the applicant's lower-ranked regions. Barbot Supp. Decl. ¶ 5. Otherwise, each applicant would

6

be compared to the other applicants seeking a license in only its top-ranked region, with the highest-scoring applicants receiving the available licenses.

## B. Plaintiff's Application

OCM accepted applications from August 25 through September 26, 2022. *See* Barbot Decl. ¶ 33. It ultimately received 903 applications for the 150 licenses available. Barbot Supp. Decl. ¶ 6.

Plaintiff applied for a license. Application, ECF No. 20-3. According to its application, Kenneth Gay, a Michigan resident, owns 51% of Variscite and Jeffrey Jensen, a California resident, owns 49%. Application at 2-3. Plaintiff is incorporated under the Business Corporation Law of the State of New York. Barbot Decl. ¶ 38. According to the application, owner Kenneth Gay is justice-involved, with a 2007 conviction for Criminal Possession of Marihuana in the First Degree. Application at 5. Gay's marihuana conviction was under Michigan law, not New York law. Compl. ¶ 31, ECF No. 1. Plaintiff selected the Finger Lakes region as its top choice, with Central New York, Western New

7

York, Mid-Hudson, and Brooklyn as its second through fifth choices respectively. Application at 11.

Although plaintiff did not satisfy the justice-involved requirement for a license, OCM processed plaintiff's application as though that criterion was satisfied both for purposes of responding to this lawsuit and because plaintiff had erroneously checked off the box indicating that one of its owners had a New York conviction. Barbot Supp. Decl. ¶ 17. OCM thus scored the application as though the requirement had been met and ultimately awarded plaintiff 41 points out of a possible 100. *Id.* ¶¶ 23-24; Variscite Scoresheet. This score was lower than 40 license applicants, and OCM prepared a rejection letter for plaintiff based on its low score rather than failure to satisfy the justice-involved requirement. *Id.* ¶¶ 17-26; Variscite Scoresheet; *see also* ECF No. 32, at 4 n.2 (discussing rejection letter). OCM has not yet sent that rejection letter due to this ongoing litigation.

## C. The District Court Grants a Preliminary Injunction and Declines to Narrow the Injunction

Plaintiff filed the present suit seeking injunctive and declaratory relief on September 26, 2022—the final date to apply for a dispensary license. *See* Compl. It challenged New York's significant presence requirement and justice-involved requirement, arguing that they violate the dormant Commerce Clause. *Id.* ¶¶ 34-42.

Following a hearing, on November 10, 2022, the district court (Sharpe, J.) granted plaintiff's motion for a preliminary injunction in the five geographic regions for which plaintiff had indicated a preference. The court acknowledged that plaintiff "would qualify as having a significant New York State presence" under New York's regulations, but the court seemingly concluded that a line on the CAURD application website set a different requirement for significant presence that plaintiff did not meet. PI Opinion at 9 n.3, ECF No. 28. It then concluded that plaintiff was likely to succeed on the merits of its challenge, holding without explanation that both challenged regulations discriminated against out-of-state economic actors, that the regulations were subject to heightened dormant

9

Commerce Clause scrutiny, and that they were not narrowly tailored to advance a legitimate local purpose. *Id.* at 18-20.

The court further concluded that plaintiff had shown a risk of irreparable harm because any infringement on constitutional rights "automatically qualifies as irreparable harm." *Id.* at 23-25. And it determined that the balance of hardships favored plaintiff because OCM had not yet begun issuing dispensary licenses and because the injunction would apply only to five regions. *Id.* at 27-28. Finally, the court concluded that the public interest would be served by an injunction because unconstitutional policies are always contrary to the public interest. *Id.* at 28.

Defendants appealed (ECF No. 34) and moved in the district court to narrow the preliminary injunction to a single region and for a stay pending appeal. The motion was based on newly discovered information showing that plaintiff would only be considered for a license in its top-choice geographic region and on the manifest injustice that would occur if the preliminary injunction continued in the other four enjoined regions. ECF No. 29. OCM explained that, after reviewing all 903 applications for licenses, it had determined that there were a sufficient number of appli-

10

cations for each geographic region, resulting in every applicant being considered only for its top-choice region. Barbot Supp. Decl. ¶ 6-7.

The district court denied defendants' motions.[3] Second Opinion, ECF No. 46. The court concluded that defendants had provided no basis to reconsider the scope of the injunction because OCM should have known on September 26, 2022, that it had enough applicants for each geographic region. Second Opinion at 16. The district court also saw no manifest injustice in enjoining licenses in the four geographic regions in which plaintiff would not be considered for a license. *Id.* at 17.

Defendants timely filed an amended notice of appeal including the district court's order denying the motion to narrow the preliminary injunction as well as the earlier order granting the injunction. ECF No. 47.

---

[3] The district court simultaneously denied defendants' motion to dismiss, which is not before this Court.

11

## ARGUMENT

## POINT I

### THE DISTRICT COURT'S PRELIMINARY INJUNCTION SHOULD BE STAYED PENDING APPEAL

This Court should stay the preliminary injunction pending appeal. Relevant to this inquiry are the movant's likelihood of success on the merits, irreparable injury to the movant without a stay, substantial injury to the opposing party if a stay is issued, and the public interest. *See, e.g.*, *Hassoun v. Searls*, 968 F.3d 190, 195 (2d Cir. 2020). These criteria operate "somewhat like a sliding scale," with the required chance of success on appeal inversely proportional to the strength of the equities. *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). Here, all four factors counsel in favor of a stay.

### A. Defendants Are Likely to Succeed on Their Appeal.

The district court's determination that plaintiff was likely to succeed in its challenge to OCM's requirements was flawed in two respects: first, the decision ignored issues of justiciability that deprived the court of jurisdiction, and second, the decision misapplied existing dormant Commerce Clause caselaw.

12

1. **Plaintiff lacks standing to challenge the license requirements; alternatively, its challenge is moot to the extent it asserts a denial of an opportunity to compete for a license.**

To have standing, a plaintiff must demonstrate (1) an injury-in-fact, which is "concrete and particularized" harm, (2) a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant, and (3) a non-speculative likelihood that the injury can be remedied by the requested relief. *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008). A federal court lacks jurisdiction to consider an action in which the plaintiff cannot demonstrate standing. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). On a preliminary injunction, plaintiff's burden to demonstrate standing is "no less than that required on a motion for summary judgment," and plaintiff must demonstrate standing by specific evidence rather than resting on mere allegations. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citation omitted).

While standing focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when suit was filed, the mootness doctrine ensures that the litigant's interest continues throughout the

13

lawsuit. *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021). A case becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting *Jakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020)). Mootness is jurisdictional, and if a case no longer presents an actual, redressable injury, it must be dismissed. *Id.*

Plaintiff lacks standing to challenge the significant presence requirement because, having satisfied that requirement, plaintiff has no injury traceable to it. As its complaint (Compl. ¶ 1) and application documents (Barbot Decl. ¶¶ 15, 38; Barbot Supp. Decl. ¶ 17) demonstrate, plaintiff is incorporated under the laws of the State of New York. Incorporation under New York law establishes significant presence in the State. 9 N.Y.C.R.R. § 116.4(a)(1)(ii). Plaintiff thus was not and could not be denied a license under this requirement and cannot challenge its constitutionality. *See United States v. Smith*, 945 F.3d 729, 739 (2d Cir. 2019) (plaintiff lacks standing to challenge statutory subsections "unrelated to the proscription of his conduct").

14

The district court concluded that plaintiff had standing to challenge the requirement based on a single line in the CAURD application website, which in the court's view, created a different requirement that plaintiff did not satisfy. PI Opinion at 9 n.3. But the document on which the court relied merely restates *that* applicants must have significant presence in New York, not *how* an applicant can satisfy the requirement. Moreover, a generalized statement in a non-binding guidance document does not displace the regulatory requirements passed by OCM and was insufficient to confer standing on plaintiff.

Plaintiff also lacks standing to challenge the justice-involved requirement; it cannot show any injury traceable to this requirement because plaintiff did not qualify for a license for unrelated reasons. OCM reviewed plaintiff's application and concluded that even if it had demonstrated justice involvement, plaintiff's score was not high enough to earn a license.

Applying OCM's objective scoring criteria, plaintiff scored only 41 out of a possible 100 points, which is too low to qualify for a license in plaintiff's preferred location given the better scores of other applicants.

15

Barbot Supp. Decl. ¶¶ 23-26. This low score was largely due to the business's justice-involved individual living in a high-income area at the time of his arrest. *Id.* ¶ 23. Plaintiff also lost points for the nature of its business because the business had never sold products out of a storefront location, had no employees, and had not previously suffered financial obstacles such as denial of a bank loan.[4] *Id.* ¶ 24. Thus, even absent the challenged requirement, plaintiff would not receive a license and cannot demonstrate an injury fairly traceable to the justice-involved requirement.

The district court nevertheless concluded that plaintiff had standing because, in the court's view, plaintiff's injury stemmed not from its lack of license but its inability to compete on an equal footing with state residents. Second Opinion at 9-10. The court incorrectly relied on

---

[4] On November 28, Plaintiff amended its CAURD application, claiming that it had been denied a bank loan and had operated a personal services business. Those changes would boost its score by 6.75 points (yielding a total score of 47.75 out of 100) but would not materially improve Plaintiff's standing compared to other applicants for the Finger Lakes region. Plaintiff would be ranked 38 out of 43 applicants, rather than 41 out of 43.

the Supreme Court's decision in *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), to support its conclusion. Second Opinion at 10. But that case considered a violation of the Equal Protection Clause and recognized that in such cases, the very act of erecting barriers based on invidious discrimination, such as race-based exclusions, is itself a constitutional injury. 508 U.S. at 666. No similar reasoning applies to dormant Commerce Clause challenges. Rather, as this Court has recognized, the "fundamental objective of the dormant Commerce Clause is to preserve a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208 (2d Cir. 2003) (cleaned up) (citation omitted). Thus where, as here, plaintiff cannot demonstrate that State law has *actually impeded* it from competing in a local market, plaintiff lacks standing to challenge the law.

In any event, to the extent plaintiff's suit seeks an opportunity to compete for a license on equal footing, its claim is moot. OCM in fact credited plaintiff as having demonstrated justice-involvement, and even

17

gave plaintiff the maximum score on this category received by those whose owner (and not family member) is justice-involved. OCM then assessed plaintiff's application, which received fewer points than applicants who would be entitled to the limited number of licenses available to the Finger Lakes region. Barbot Supp. Decl. ¶¶ 17, 23-26. By fully evaluating plaintiff's application despite its failure to satisfy the justice-involved requirement, OCM has already accorded plaintiff the opportunity that it seeks. And to the extent plaintiff alleges injury in the form of not being granted a license, that injury is unrelated to the challenged requirements and cannot be redressed by this Court. *See Alexander v. Yale Univ.*, 631 F.2d 178, 184 (2d Cir. 1980).

### 2. The justice-involved requirement does not violate the dormant Commerce Clause.

Even assuming plaintiff had a justiciable challenge to the justice-involved requirement (the only challenged requirement that it did not satisfy), the challenge would fail, because this regulatory requirement does not violate the dormant Commerce Clause.

The Commerce Clause of the U.S. Constitution provides Congress with the power to regulate commerce "among the several States." Art. I, § 8, cl. 3. The Clause contains a "negative aspect" that "prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). If a state law clearly discriminates against out-of-state goods or economic actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose. *Id.* at 2461. A law may be "clearly discriminatory" against out-of-state economic actors in three ways: (1) by discriminating against interstate commerce on its face, (2) by having a discriminatory purpose, or (3) by discriminating in effect. *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 48 (2d Cir. 2007). However, if a law only "incidentally burdens interstate commerce," it is subject to a permissive balancing test "and will be struck down if the burden imposed on interstate commerce clearly exceeds the putative local gains." *Id.* at 47; *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

19

Here, the challenged requirement does not discriminate against out-of-state economic actors and is subject only to the more permissive balancing test established in *Pike*, which it readily passes.

First, the justice-involved requirement does not discriminate against out-of-state economic actors either on its face or in effect. Namely, it does not require that a justice-involved individual associated with an applicant be a resident of New York, only that the individual or their relative have a marihuana conviction under New York law. An individual need not be a current resident of New York to have a marihuana-related conviction under State law. Individuals may have been convicted of a marihuana-related offense while previously living in the State. An individual may also have been convicted of a marihuana offense committed while visiting New York, commuting to New York for work, or simply driving through the State en route to somewhere else. And the justice-involved requirement also awards points to businesses whose *family members* have a marihuana conviction under New York law. In other words, a business may be owned by an individual who has never

20

been to New York if that person's spouse, parent, or child was convicted of a marihuana-related offense under New York law.

To be sure, many individuals who have marihuana-related offenses under New York law will be current State residents. But the requirement cannot be said to "discriminate on the basis of geography" or confer a competitive advantage on local businesses over out-of-state competitors. *See Town of Southold*, 477 F.3d at 49. Rather, the justice-involved requirement at most places an incidental burden on interstate commerce. *See id.* at 49-50 (concluding that law prohibiting ferries from landing in town only incidentally burdened interstate commerce).

The cases on which the district court relied to conclude otherwise are inapt. *See* PI Opinion at 17-18. All of these cases involved facially discriminatory regulations that gave preference to businesses owned by state residents or outright required in-state residency. *See, e.g.*, *Ne. Patients Grp. v. Utd. Cannabis Patients & Caregivers*, 45 F. 4th 542, 544, 546 (1st Cir. 2022) (requirement that all officers of dispensary be state residents); *NPG, LLC v. City of Portland*, 2020 WL 4741913, at *2 (D. Me. Aug. 14, 2020) (preference given to businesses majority-owned by

21

individuals residing in state for at least five years). The justice-involved requirement bears no similarity to those discriminatory laws.

Second, the justice-involved requirement does not have a discriminatory purpose. Rather, New York's purpose in requiring justice-involvement is to ameliorate the harm done by New York's prior laws criminalizing marihuana, including their selective enforcement and the collateral consequences such as incarceration and lack of employment opportunities caused by a criminal marihuana conviction. N.Y. Canbs. § 2. New York thus gave preference to individuals who had suffered harm because of its prior criminalization of marihuana, without regard to their residence, either now or at the time of their offense or conviction.

Because the justice-involved requirement does not discriminate on its face, in purpose, or in effect, the regulation must be upheld so long as any incidental burden it places on interstate commerce is outweighed by its local public benefits. *Town of Southold*, 477 F.3d at 50. The local public benefit of addressing the severe collateral consequences of the State's prior marihuana laws is significant. In comparison, the burden placed on interstate commerce is minor: a business wanting to apply for

22

a license need only include in its ownership one individual who is justice-involved (by having a marijuana conviction themselves or a family member with a conviction). *See* 9 N.Y.C.R.R. § 116.4(a)(2)(i). Even if plaintiff could demonstrate standing to challenge the justice-involved requirement, defendants are thus likely to prevail on the merits.

## B.  Equitable Factors Support a Stay.

The remaining factors—irreparable injury to defendants, lack of substantial injury to the plaintiff, and the public interest—all counsel in favor of granting a stay of the preliminary injunction.

The State and its citizens will experience irreparable harm absent a stay. At present, 66 of the 150 available licenses for dispensaries have been given out, namely licenses allocated to regions not subject to the injunction. The 54 licenses allocated to the enjoined regions have not been awarded, although approximately 20 of those putative licensees have been notified. As a result, 54 applicants have been denied the ability to open their businesses, hire employees, and sell cannabis products. Barbot Supp. Decl. ¶ 10. The resulting uncertainty for these businesses and the State constitutes irreparable harm. *See Romer v. Green Point*

23

*Sav. Bank*, 27 F.3d 12, 16 (2d Cir. 1994) (confusion, delay, and expense of TRO constituted irreparable harm).

What's more, OCM has licensed 262 businesses—primarily small family farms—to grow cannabis in New York, along with 25 manufacturers to process marihuana crops into commercial products.[5] Barbot Supp. Decl. ¶¶ 11-12. The preliminary injunction has significantly reduced the market for these goods, risking growers' and processors' financial solvency. In particular, the 121 growers and 16 manufacturers located in the five regions enjoined from licensing dispensaries must expend significant additional resources to sell and transport goods to dispensaries in the active geographical regions.[6] Likewise, landlords who had agreed to lease spaces to dispensaries in the currently enjoined regions are left with vacant store fronts, and the significant time and money the State spent negotiating for these shop fronts will go to waste. Barbot Supp. Decl. ¶ 14.

---

[5] OCM has indicated to us that the current numbers are 279 licensed growers and 40 licensed manufacturers.

[6] The ongoing injury to these businesses warrants at least narrowing the preliminary injunction as request below in Point II, *infra*.

24

The residents of the State will also suffer irreparable harm. People who live in the five enjoined regions are unable to purchase cannabis at a legal dispensary in their area, forcing them to either expend additional time and money to travel to a dispensary in a non-enjoined region or turn to illicit sources to procure cannabis products, risking unsafe products and exposure to the criminal legal system despite the State's legalization of cannabis. And the loss of sales at 54 dispensaries in the currently enjoined regions results in significant lost tax revenue to the State.

In contrast, plaintiff will suffer no irreparable injury absent a stay. First, because plaintiff does not qualify for a license even absent the challenged regulations, *see supra* pp. 15-18, it will not suffer any redressable injury if a stay is granted. Second, any purported injury would not be irreparable. Rather, it would relate to the loss of business income or market share, which is the type of monetary injury that is fully compensable through damages. *See Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (irreparable harm is an injury "that cannot be remedied by an award of monetary damages"). The district court's conclusion that plaintiff had alleged a per se irreparable injury

25

was thus erroneous. Cases concluding that violations of an individual's personal rights under the First or Fourteenth Amendment are per se irreparable injury are inapplicable to a violation of a constitutional provision that seeks only to ensure fair economic marketplaces, and for which any injury is compensable through damages.

Because defendants and the public face irreparable injury absent a stay, and because plaintiff will suffer no harm if a stay is granted, this Court should stay the preliminary injunction pending appeal.

## POINT II

### IN THE ALTERNATIVE, ANY INJUNCTIVE RELIEF SHOULD BE NARROWED PENDING APPEAL

Although the preliminary injunction should be stayed entirely, as explained above, at a minimum it should be narrowed to apply only to the Finger Lakes region of New York, which would suffice to prevent any alleged harms which plaintiff could possibly have standing to challenge.

This Court has the discretion to "narrow the scope" of a preliminary injunction pending an appeal, based on "the relative harms to [the parties], as well as the interests of the public at large." *Trump v. Int'l*

26

*Refugee Assistance Project*, 137 S. Ct. 2080, 2087-88 (2017) (citation omitted). Here, the district court enjoined OCM from awarding licenses to dispensaries in plaintiff's five preferred regions—Finger Lakes, Central New York, Western New York, Mid-Hudson, and Brooklyn. PI Opinion at 29. But following the district court's preliminary injunction decision, OCM determined that there were a sufficient number of applicants for each geographical region, meaning that each applicant will *only* be considered for its top-choice region. Barbot Supp. Decl. ¶¶ 4-8. Plaintiff would thus only be considered for a license in the Finger Lakes region, and there is no basis to enjoin the distribution of licenses in the remaining regions. Indeed, plaintiff lacks standing to challenge the issuance of licenses in the other four enjoined regions.

The district court denied defendants' motion to narrow the preliminary injunction on this ground, concluding that defendants should have known at the time of the preliminary injunction that there were sufficient applicants for each geographic region. Second Opinion at 16-17. As an initial matter, this reasoning ignores the practical reality that OCM was required to manually review over 900 applications, request missing or

additional information from applicants to properly review their paper-work, and assess whether the applicants were qualified before knowing that there were sufficient legitimate applicants for each region. This process took time and could not be completed prior to briefing on plaintiff's motion for a preliminary injunction. But even so, because the question of where plaintiff could be granted a license implicates plaintiff's standing, the court was required to consider the issue and assure itself of jurisdiction to enter, and maintain, the requested relief. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (court must satisfy itself of its own jurisdiction even if the issue is not raised by the parties).

What's more, absent a narrowing of the preliminary injunction, manifest injustice will occur. As described above, the preliminary injunction has significant deleterious effects on licensed cannabis growers and producers in the state, businesses that would be granted licenses for dispensaries, residents who wish to consume legal cannabis, and the State. *See supra* pp. 23-25. Because of the burdens the injunction places on people and businesses across New York, it should be only broad enough to provide temporary relief to plaintiff without burdening others.

28

The decision to continue enjoining licenses in four regions in which plaintiff will not be considered for a license unnecessarily harms businesses and individuals in those regions and constitutes manifest injustice.

## CONCLUSION

This Court should grant a stay pending appeal of the district court's preliminary injunction, or alternatively, narrow the preliminary injunction to apply only in the Finger Lakes region of the State.

Dated:  Albany, New York
   February 16, 2023

         Respectfully submitted,

         LETITIA JAMES
          *Attorney General*
          *State of New York*
         Attorney for

       By: /s/ *Alexandria Twinem*
         Alexandria Twinem
         Assistant Solicitor General

BARBARA D. UNDERWOOD
 *Solicitor General*      The Capitol
JEFFREY W. LANG      Albany, New York 12224
 *Deputy Solicitor General*   (518) 776-2042
ALEXANDRIA TWINEM
 *Assistant Solicitor General*
  *of Counsel*

29

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Alexandria Twinem, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,199 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).

*/s/ Alexandria Twinem*

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VARISCITE NY ONE, INC.,

                       **Plaintiff,**

          **v.**

STATE OF NEW YORK et al.,

                    **Defendants.**
_____

**1:22-cv-1013
(GLS/DJS)**

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| **FOR THE PLAINTIFF:** | |
| Kernkamp Law, APC | CHRISTIAN KERNKAMP, ESQ. |
| 1801 Century Park East, 24th Floor | |
| Los Angeles, CA 90067 | |
| | |
| E. Stewart Jones Hacker Murphy, LLP | THOMAS J. HIGGS, ESQ. |
| 28 Second Street - Suite 203 | |
| Troy, NY 12180 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. LETITIA JAMES | MATTHEW GALLAGHER |
| New York State Attorney General | AMANDA K. KURYLUK |
| The Capitol | Assistant Attorneys General |
| Albany, NY 12224 | |

**Gary L. Sharpe
Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Variscite NY One, Inc. commenced this action on September

26, 2022 against the State of New York, the New York State Office of

Cannabis Management (OCM), and the Executive Officer of OCM,

Christopher Alexander, pursuant to 42 U.S.C. § 1983, alleging a violation

of the dormant Commerce Clause.  (Compl., Dkt. No. 1.)  Now pending is

Variscite's motion for a preliminary injunction, which seeks an order

"restrain[ing defendants] from issuing any cannabis licenses under the

[conditional adult-use retail dispensary (CAURD)] application program held

from August 25 to September 26, 2022, for the following geographic areas:

Finger Lakes; Central New York; Western New York; Mid-Hudson; and

[Brooklyn]."  (Dkt. No. 6 at 2; *see* Dkt. No. 21 at 4 n.2.[1])  For the reasons

that follow, Variscite's motion is granted.[2]

## II. __Background__

### A. __Facts__

---

[1]  Varisicite "erroneously include[d] Manhattan and omit[ted] Brooklyn in the five geographic areas" for which it is seeking an injunction in its initial proposed order.  (Dkt. No. 21 at 4 n.2.)

[2]  Variscite additionally requests the court take judicial notice of certain documents submitted in connection with their motion for a preliminary injunction.  (Dkt. No. 21, Attach. 1; Dkt. No. 27.)  Because those documents need not be considered by the court in connection with the disposition of the motion as discussed below, the court declines to take judicial notice of them.

On March 31, 2021, New York enacted the Marihuana Regulation & Taxation Act, with the short title of "Cannabis Law."  N.Y. CANBS. § 1. Under the Cannabis Law, a person or entity may be an "applicant" for a cannabis license if that applicant has "a significant presence in New York state, either individually or by having a principal corporate location in the state; is incorporated or otherwise organized under the laws of this state; or a majority of the ownership are residents of this state."  NY CANBS § 3. Additionally, pursuant to the Cannabis Law, OCM has the power "[t]o prescribe the form of applications for [cannabis] licenses and permits under" the Cannabis Law.  N.Y. CANBS. § 11(4).

On August 3, 2022, OCM adopted part 116 of Chapter II of Subtitle B of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (the "Cannabis Regulations"), which, in part, governs "CAURD licenses and the application process to acquire such licenses.  9 N.Y.C.R.R. § 116.1-.9.

Section 116.4(a) of the Cannabis Regulations, states:

> The following minimum requirements must be met to become an eligible applicant for [a CAURD] license:
>
> (1) an applicant must demonstrate:

3

        (i) a significant presence in New York State, either individually or by having a principal corporate location in the state;

        (ii) it is incorporated or otherwise organized under the laws of New York State; or

        (iii) a majority of the ownership of the applicant are residents of New York State by being physically present in the state no less than 180 calendar days during the current year or 540 calendar days over the course of three years;

(2) if the applicant is an individual, or an entity with one or more individuals, at least one individual must:

        (i) be justice involved, which means an individual that:

                *(a)* was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one;

                *(b)* had a parent, legal guardian, child, spouse, or dependent who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; or

                *(c)* was a dependent of an individual who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; and

        (ii) provide evidence of the primary residence of the justice involved individual at the time of such individual's arrest or conviction; and

        (iii) hold or have held, for a minimum of two

4

years, at least ten percent ownership interest in,
and control of, a qualifying business, which
means a business that had net profit for at least
two of the years the business was in operation;
or

(3) if the applicant is a nonprofit organization, or
wholly owned and controlled by one, the nonprofit
organization must:

(i) be recognized as an entity pursuant to
section 501(c)(3) of the Internal Revenue Code;
(ii) intentionally serve justice involved
individuals and communities with historically
high rates of arrest, conviction, incarceration or
other indicators of law enforcement activity for
marihuana-related offenses;
(iii) operate and manage a social enterprise that
had at least two years of positive net assets or
profit as evidenced in the organization's tax
returns;
(iv) have a history of creating vocational
opportunity for justice involved individuals;
(v) have justice involved individual(s) on its
board or as officers; and
(vi) have at least five full time employees.

Additionally, § 116.4(b) provides the "[a]pplicant [o]wnership and

[c]ontrol [m]inimums" required to acquire a CAURD license, demanding:

(1) At least 51% or more of the applicant shall be
owned, in the aggregate, by:

(i) at least one individual that satisfies the
requirements for an eligible applicant set forth
in sections 116.4(a)(1) and 116.4(a)(2) or entity

5

that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(3) of this Part; and

(ii) any other additional individuals, if any, who are justice involved; and

(2) At least one individual that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(2) or entity that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(3) of this Part shall own at least 30% of the applicant and such individual or entity shall have sole control of the applicant or licensee.

Further, Section 116.4(c) outlines the CAURD application evaluation criteria, stating:

An eligible applicant shall be evaluated based on any of the following criteria which shall be weighted as determined by the Office:

(1) if the applicant is an individual, or an entity with one or more individuals, whether the justice involved individual was themselves convicted of a marihuana-related offense as set forth in section 116.4(a)(2)(i)(a) of this Part;

(2) the justice involved individual's primary residence at the time of such individual's arrest or conviction:

(i) relative to areas with historically high rates of arrest, conviction, or incarceration for marihuana-related offenses;

(ii) relative to areas with historically low median income; or

6

(iii) was provided by a public housing authority in New York State or New York City; and

(3) the qualifying business based on:

(i) the number of employees employed by the business;
(ii) the number of years the business has been in operation;
(iii) the profitability of the business;
(iv) type of business and whether the business was a retail business, or sold products or services directly to the end-consumer;
(v) whether the business had a physical location; or
(vi) whether the business received or resolved any violations, fines or fees assessed against the business by state or federal regulatory authorities; and
(4) any other factors as determined by the Office.

Finally, Section 116.4(d) provides:

The office may create regional geographic zones for the scoring of [CAURD license] applicants. Applicants may be asked to rank a number of preferences of regional geographic zones to be considered for a license. For regional geographical zones where there are more applicants than available licenses, the Office may select from eligible applicants who indicated first preference for the given region based on weighted scoring of the evaluation criteria set out above. In the event there is a tie between two or more candidates or there are more applicants than available licenses after the evaluation criteria has been applied, the Office is authorized to

use a random selection process to identify the final
applicants to recommend to the Board for licensure.

OCM also published a document titled "Conditional Adult-Use Retail
Dispensary (CAURD) *Frequently Asked Questions*," in which it explained,
among other things, that "applicants are required to have a significant New
York State presence or to otherwise satisfy the definition of applicant in the
Cannabis Law and may be asked to submit documentation to prove such."
(Dkt. No. 6, Attach. 19 at 8.)  The document further elaborated:
"acceptable documentation [to prove a significant New York presence]
includes:" (1) "Proof of the individual with sole control's residency in New
York State"; (2) "Checking, savings, retirement, or brokerage statements
showing assets in New York State"; (3) "Tax filings showing assets,
accounts, or property in New York State"; (4) "Deeds, titles, mortgage
documents, or homeowner warranties showing property ownership in New
York State," or; (5) "Any other proof of New York State presence as
determined by the Office."  (*Id.* at 8-9.)

Defendants invited applications for CAURD licenses through a "New
York Business Express application website," and accepted applications
from August 25, 2022 until September 26, 2022.  (Compl. ¶ 22; *see* Dkt.

8

No. 6, Attach. 9.) CAURD applicants were permitted to select up to five geographic regions of New York State for which their application would be considered, including: Brooklyn; Capital Region; Central New York; Finger Lakes; Long Island; Manhattan; Mid-Hudson; Mohawk Valley; North Country; Queens; Southern Tier; Staten Island; the Bronx; and Western New York. (Compl. ¶ 30; *see* Dkt. No. 6, Attach. 15.)

Variscite applied for a CAURD license; however, because it "is [fifty-one percent] owned by an individual who has a cannabis conviction under Michigan law" and "has no significant connection to New York,"[3] Variscite is ineligible to be selected. (Compl. ¶ 31.) Variscite "satisfies all [other] requirements of the Cannabis Law and Cannabis Regulations to apply in the CUARD Application Program." (*Id.* ¶¶ 31.) As part of its application, Veriscite selected the Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn as the areas for which its application would be

---

[3] Because Variscite "is a corporation organized under the laws of the State of New York," (Compl. ¶ 1), it appears that it would qualify as having a significant New York State presence under Section 116.4(a)(1)(ii) of the Cannabis Regulations; however, the CAURD application website requires "[t]he business principal with sole control over the CAURD applicant [to] have [a] significant presence in New York State to be eligible for a CAURD license," and in order to proceed with the application process, (Dkt. No. 6, Attach. 10), a requirement that Variscite's business principal does not meet, (Compl. ¶ 31).

considered.  (*Id.* ¶ 33.)

## B.    Procedural History

Variscite filed its complaint on September 26, 2022.  (Compl.)

Shortly thereafter, on October 4, 2022, Variscite moved for a temporary

restraining order (TRO) and preliminary injunction by order to show cause.

(Dkt. No. 6.)  Because "the [TRO and preliminary injunction] motion papers

were not provided [to defendants], and . . . , instead, [Variscite] gave notice

only that a motion was filed," the court treated the motion as "a TRO

without notice."  (Dkt. No. 9.)  Accordingly, because Variscite "ha[d] not

satisfied the court that the strict requirements of Rule 65(b) [of the Federal

Rules of Civil Procedure] ha[d] been met," the court denied the application

for a TRO and set a briefing schedule and motion return regarding the

preliminary injunction.  (Dkt. No. 9.)  The parties then requested a modified

briefing schedule, (Dkt. No. 12), which was granted, (Dkt. No. 13).  The

court held an oral return by video on Variscite's motion for a preliminary

injunction on November 11, 2022 and reserved its ruling.[4]

---

[4]  At the November 11, 2022 hearing, the court granted Verisite's
request to supplement the record, which it did following the hearing.  (Dkt.
No. 27.)

On November 2, 2022, after the pending preliminary injunction
motion was fully briefed, defendants moved to dismiss, (Dkt. No. 22),
raising many of the same arguments they made in their opposition to
Variscite's preliminary injunction motion, (Dkt. No. 20, Attach. 1), which will
be discussed below, as well as new arguments regarding standing, and
Eleventh Amendment immunity, (Dkt. No. 22, Attach. 1).  The standing and
Eleventh Amendment arguments *were not* made in connection with
defendants' response to Variscite's preliminary injunction motion nor were
they raised by defendants during the motion return, and the motion to
dismiss is not yet fully briefed.

### III.  Standard of Review

When seeking a preliminary injunction, a plaintiff must show:

> (1) a likelihood of success on the merits or . . .
> sufficiently serious questions going to the merits to
> make them a fair ground for litigation and a balance
> of hardships tipping decidedly in the plaintiff's favor;
> (2) a likelihood of irreparable injury in the absence of
> an injunction; (3) that the balance of hardships tips in
> the plaintiff[s]'[] favor; and (4) that the public interest
> would not be disserved by the issuance of an
> injunction."

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir.

2015) (internal quotation marks and citation omitted).  "[A] party need not

11

show as high a likelihood of success if it can demonstrate that the balance of hardships tips decidedly in its favor." *N.Y. Life Ins. Co. v. Singh*, No. 14CV5726NGSMG, 2017 WL 10187669, at *1 (E.D.N.Y. July 13, 2017) (citation omitted).

To obtain an injunction that "alter[s] the status quo by commanding some positive act," sometimes referred to as a "mandatory" injunction, the applicant must show "a clear or substantial likelihood of success on the merits," rather than simply a likelihood of success on the merits. *See N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

## IV. Discussion

### A. The Injunctive Relief Sought

As a preliminary matter, the court must determine which standard of review applies to the injunction sought. Variscite argues that it requests a "prohibitory" injunction which only "preserves the status quo." (Dkt. No. 21 at 2.) Defendants contend that the injunction sought by Variscite is "mandatory," or "one that "alter[s] the status quo by commanding some positive act." (Dkt. No. 20, Attach. 13 at 4.)

As mentioned above, a "mandatory" injunction that "alter[s] the status

quo by commanding some positive act," requires a showing of "a clear or substantial likelihood of success on the merits."  *See N.Y. Civil Liberties Union*, 684 F.3d at 294.  "Prohibitory injunctions [that] maintain the status quo pending resolution of the case" require a showing of "a likelihood of success on the merits."  *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018).

Veriscite seeks a preliminary injunction "restrain[ing defendants] from issuing any cannabis licenses under the CAURD application program" in certain geographic areas.  (Dkt. No. 6 at 2; *see* Dkt. No. 21 at 4 n.2.)  Given the relief sought, and the fact that the licensing process has not begun[5] — and according to representations made by defendants' counsel during the motion return, will not begin until, at the earliest, November 21, 2022 — Variscite seeks a "prohibitory injunction," or, rather, one that "seeks only to maintain the *status quo,*" and, thus, it need only show a likelihood of success on the merits.  *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (finding that a requested injunction preventing the enforcement of a street vending licensing scheme against

---

[5]  Even if the licensing process had begun sometime after the filing of Variscite's complaint, the injunction would still be classified as prohibitory.  *See N. Am. Soccer League*, 883 F.3d at 37 n.5.

certain art vendors was prohibitory, because the injunction would preserve, rather than alter, the status quo). Defendants' argument that the injunction sought is mandatory or status quo-altering is unpersuasive, as they have provided no justification for their position. (*See, e.g.*, Dkt. No. 20, Attach. 13.) Accordingly, Variscite must show only a likelihood of success on the merits, rather than a clear or substantial likelihood of success.[6]

## B. **Likelihood of Success on the Merits**

### 1. *Dormant Commerce Cause Scrutiny*

The Commerce Clause of the Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "Although the [Commerce] Clause is framed as a positive grant of power to Congress, [the Supreme Court] ha[s] long held that this Clause also prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019) (internal quotation marks and citation omitted). "This 'negative' aspect of the Commerce Clause prevents the

---

[6] While Varisicte need only demonstrate a likelihood of success on the merits, the court notes that Veriscite has also demonstrated a clear likelihood of success on the merits and, thus, would satisfy the standard for a mandatory injunction for the same reasons that it has shown a likelihood of success.

14

States from adopting protectionist measures and thus preserves a national market for goods and services." *Id.* (internal quotation marks and citation omitted). This interpretation is known as "the dormant Commerce Clause." *Id.*

Here, in order to determine the likelihood of Variscite's success on the merits, the court must determine what level of dormant Commerce Clause scrutiny applies. Variscite argues that the first, more demanding, level of scrutiny applies because the Cannabis Law and Cannabis Regulations "directly discriminate against interstate commerce." (Dkt. No. 6, Attach. 3 at 8-9.) Defendants contend that the second, less demanding, level of scrutiny applies. (Dkt. No. 20, Attach. 13 at 4-5.) The court agrees with Veriscite.

"In analyzing a challenged local law under the dormant Commerce Clause, [the court must] . . . determine whether it clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir. 2007) (citation omitted); *see United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 255 (2d Cir.

15

2001) ("Once a court determines that a state regulation affects interstate commerce, it must next determine whether the regulation 'discriminates against interstate commerce' or regulates even-handedly with incidental effects on interstate commerce." (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994)).

"[I]f a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose." *Tenn. Wine & Spirits*, 139 S. Ct. at 2461 (internal quotation marks and citation omitted); *see Town of Southold*, 477 F.3d at 47 ("A law that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid *per se*."). "The term discrimination in this context 'means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Town of Southold*, 477 F.3d at 47 (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)). "A clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face; (2) by harboring a discriminatory purpose; or (3) by discriminating in its effect." *Id.* (citations omitted); *see Vizio, Inc. v. Klee*, No. 3:15-cv-00929, 2016 WL 1305116, at

16

\*6 (D. Conn. Mar. 31, 2016) (citation omitted).

On the other hand, where a law does not clearly discriminate, and "only incidentally burdens interstate commerce [it] is subject to [a] more permissive balancing test . . . and will be struck down if the burden imposed on interstate commerce clearly exceeds the putative local gains." *Town of Southold*, 477 F.3d at 47; *see Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").

Numerous District Courts have ruled on similar regulatory cannabis licencing schemes, and all applied the heightened level of dormant Commence Clause scrutiny. *See NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 WL 4741913, at \*2 (D. Me. Aug. 14, 2020) (applying heightened standard to a licencing scheme where applications were evaluated on a point scale, with the maximum potential points being thirty-four, with five points awarded if the applicant was "[a]t least [fifty-one percent] owned by individual(s) who ha[d] been a Maine resident for at

least five years," and with four points awarded to applicants "[o]wned by individual(s) who have previously been licensed by the State of Maine or a Maine municipality for non-marijuana related business")*; see also Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177, 180 (D. Me. 2021) *aff'd by* 45 F.4th 542 (1st Cir. 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 989 (W.D. Mo. 2021); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 807-08 (E.D. Mich. 2021); *Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572, at *12 (N.D. Ill. June 9, 2022).

Here, the challenged law and regulations require the CAURD applicant to demonstrate "a significant presence in New York State," a showing that can be met by demonstrating "a majority of the ownership of the applicant are residents of New York State." 9 N.Y.C.R.R. § 116.4(a). Applicants may also meet the "significant presence" criteria by demonstrating that it is "incorporated or otherwise organized under the laws of New York State," *id.*, or by providing documentation demonstrating: (1) "Proof of the individual with sole control's residency in New York State"; (2) "Checking, savings, retirement, or brokerage statements showing assets in New York State"; (3) "Tax filings showing assets, accounts, or property in New York State"; (4) "Deeds, titles, mortgage documents, or

homeowner warranties showing property ownership in New York State," or;

(5) "Any other proof of New York State presence as determined by [OCM],"

(Dkt. No. 6, Attach. 19 at 8-9). Additionally, and independent from the

"significant presence" requirement, an applicant must be "[a]t least [fifty-

one [percent] or more . . . owned, in the aggregate, by" justice involved

individuals, meaning, "convicted of a marihuana-related offense *in New*

*York State*." 9 N.Y.C.R.R. § 116.4(a)-(b) (emphasis added). Finally, the

applicant must provide proof of the justice involved individual's residence at

the time of his or her arrest or conviction, and the application evaluation

criteria includes whether the justice involved individual lived-in housing

provided by New York Public Housing Authority. *See id.* § 116.4(a), (c).

Accordingly, the aforementioned application requirements, especially

when considered in the aggregate, will have a discriminatory effect on out-

of-state residents seeking a CAURD license, and, thus, the heighten level

of dormant commerce clause should be applied. *See Town of Southold*,

477 F.3d at 47; *see also NPG, LLC*, 2020 WL 4741913, at *2.

> 2. *Whether the Challenged Laws and Regulations Survive*
> *Heightened Dormant Commerce Clause Scrutiny*

Variscite argues that the challenged law and regulation are not

sufficiently narrowly tailored because a "nondiscriminatory method could address the supposed collateral consequences of cannabis criminalization . . . , for example, [defendants] could . . . create job training programs (which would benefit entire communities, rather than the discriminatory CAURD Program that benefits just 150 applicants." (Dkt. No. 21 at 2.) In their briefing, defendants did not address whether the challenged law and regulations could survive heightened scrutiny. (*See generally* Dkt. No. 20, Attach. 13.) The court agrees with Veriscite.

As mentioned above, a challenged law can survive the heightened level of dormant Commerce Clause scrutiny "only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose." *Tenn. Wine & Spirits*, 139 S. Ct. at 2461 (internal quotation marks and citation omitted). If the heightened standard applies to a challenged law, the law is "virtually invalid per se," *see Town of Southold*, 477 F.3d at 47; *see also NPG, LLC*, 2020 WL 4741913, at *11 ("State laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity." (internal quotation marks and citation omitted)), and courts "generally str[ike] down the statute without further inquiry," *Tennessee Wine & Spirits*, 139 S. Ct. at 2471. The burden of demonstrating that the challenged law survives the heightened

level of dormant Commerce Clause scrutiny rests on the defendants. *See*

*Lowe*, 544 F. Supp. 3d at 816 (citing *Dep't of Revenue of Ky. v. Davis*, 553

U.S. 328, 338 (2008)).

The intent of the Cannabis Law is:

> [T]o regulate, control, and tax marihuana, heretofore known as cannabis, generate significant new revenue, make substantial investments in communities and people most impacted by cannabis criminalization to address the collateral consequences of such criminalization, prevent access to cannabis by those under the age of twenty-one years, reduce the illegal drug market and reduce violent crime, reduce participation of otherwise law-abiding citizens in the illicit market, end the racially disparate impact of existing cannabis laws, create new industries, protect the environment, improve the state's resiliency to climate change, protect the public health, safety and welfare of the people of the state, increase employment and strengthen New York's agriculture sector.

N.Y. CANBS. § 2.

As mentioned above, defendants did not even attempt to make the

requisite "showing that [the challenged laws and regulations are] narrowly

tailored to advanc[e] a legitimate local purpose," *Tenn. Wine & Spirits*, 139

S. Ct. at 2461 (internal quotation marks and citation omitted), in their

briefing. (*See* Dkt. No. 20, Attach. 13.) Additionally, when directly

questioned by the court as to whether the challenged laws and regulations could survive the heightened level of scrutiny during the motion return, defendants offered no cogent response.  Defendants have not met their burden of demonstrating that the Cannabis Law and Cannabis Regulations are sufficiently "narrowly tailored" to serve a legitimate local purpose.  *See Lowe*, 544 F. Supp. 3d at 816.  Therefore, Variscite is likely to succeed on

the merits of their claim.[7]

## C.   <u>Irreparable Harm</u>

Variscite argues that it will be irreparably harmed, absent an

injunction, because the challenged laws and regulations infringe on its

constitutional rights, which automatically qualifies as irreparable harm, it

---

[7]   Defendants' argument that, "even if the [c]ourt were to find that the program favors intrastate commerce, there is still no violation of the [dormant] [C]ommerce [C]lause because of the market participant exception," (Dkt. No. 20, Attach. 13 at 10), does not change this outcome. The market participant "doctrine 'differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant[, with] only the former [being] subject[ed] to the limitations of the [dormant] Commerce Clause.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 93 (2d Cir. 2009) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277 (1988)).  In making a determination regarding the market participant exception, "a court . . . must consider in each specific context if the government is acting like a private business or a governmental entity." *Id.*  Although defendants argue that "[t]he CAURD program is a selective, turnkey program targeted to provide a limited number of entrepreneurs with leased premises and loans to operate their dispensary," (Dkt. No. 20, Attach. 13 at 10-11), it is readily apparent that the State is acting as "a governmental entity" rather than "a private business" because it appears the State is providing loans and leases as a way of assisting those to which it grants a licence, rather than profiting from the licensees, which is consistent with the stated purpose of the Cannabis Law: to "make substantial investments in communities and people most impacted by cannabis criminalization to address the collateral consequences of such criminalization."  N.Y. CANBS. § 2.

will "be[] excluded from the New York storefront retail cannabis market,"

and, even if it could join the cannabis market at a later date, "[a]ll

advantages to early entrants in the market, such as access to customers

who have not developed loyalty to other business, will have been claimed."

(Dkt. No. 6, Attach. 3 at 11-13.)  Defendants argue that constitutional injury

alone is insufficient to constitute irreparable injury, "[u]pon review of

[Variscite]'s application . . . it is apparent that due to the high level of

household income for the area in which [Variscite]'s address is located at

the time of conviction (which is based on the same data for all states),

[Variscite] is unable to obtain a sufficiently high score to qualify for [a]

license[]," any business loss can be compensated with monetary damages,

Variscite may apply for a future license which "[OCM] is currently finalizing

regulations for," and Variscite's "claim of irreparable harm is remote,

speculative, and tenuous at best as [OCM] has not made a determination

on [its] [a]pplication."  (Dkt. No. 20, Attach. 13 at 11-13.)  The court agrees

with Veriscite.

    "Irreparable harm is that injury which is so serious that a monetary

award cannot adequately compensate the injured party."  *325 Bleecker,*

*Inc. v. Local Union No. 747*, 500 F. Supp. 2d 110, 123-24 (N.D.N.Y. 2007)

(citing *Citibank N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)).

Additionally, such harm cannot be merely remote or speculative. *See id.*

(citing *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.

1990)).

"In the Second Circuit, it is well-settled that an alleged constitutional

violation constitutes irreparable harm." *Martinez-Brooks v. Easter*, 459 F.

Supp. 3d 411, 448 (D. Conn. May 12, 2020) (citations omitted); *see Conn.*

*Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e

have held that the alleged violation of a constitutional right triggers a

finding of irreparable injury." (internal quotation marks and citations

omitted)); *but see Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 141-42

(N.D.N.Y. Nov. 2021) (stating that "[a] court will presume that a plaintiff has

established irreparable harm . . . if the claim involves the alleged

deprivation of a constitutional right," but the plaintiff must also

"convincingly" show that "the constitutional deprivation . . . carries

noncompensable damages" (citations omitted)).

Because Variscite alleges harm of a constitutional nature, such harm

is deemed irreparable. *See Conn. Dep't of Envtl. Prot.*, 356 F.3d at 231.

Variscite has also demonstrated, beyond the fact that the harm is of a

25

constitutional dimension, that it faces irreparable financial harm should

their CAURD application be denied, due to their risk of being excluded, to

some degree, from the market.  *See Lowe*, 544 F. Supp. 3d at 816

("[P]laintiff has demonstrated that she will suffer irreparable injury absent

an injunction, as she would, at best, be significantly disadvantaged in

applying for a recreational marijuana retail license . . . and, at worst, be

entirely eliminated from consideration for such a license."); *see also Finch*,

2022 WL 2073572, at *16 ("If the court declined to grant injunctive relief as

to the [cannabis licensing scheme] . . . [p]laintiffs' chances of obtaining

[such] licenses will be statistically narrowed.").  Accordingly, Variscite has

demonstrated irreparable harm.

### D.    **Balancing Hardships**

Variscite argues that the balance of hardships tips in its favor

because there have been no applications granted or denied yet, and

"[a]pplicants were not required to lease or purchase a property for their

business before the CAURD Application Program, and, in fact, the State

will require selected applicants to lease their business premises from

[d]efendants."  (Dkt. No. 6, Attach. 3 at 13.)  Defendants contend that the

balance of hardships is in their favor, because "[n]either [Variscite] nor any

of the individuals identified on [its] [a]pplication, nor their counsel, submitted a public comment on behalf of [Variscite] in response to the publication of the CAURD Regulations in March of this year regarding the provisions [it] challenge[s] as favoring intrastate commerce," the State has already licensed two hundred and sixty-one cannabis cultivators who have already grown cannabis, which would now face spoilation or diversion into the illicit market if an injunction is ordered, and delaying the enactment of the Cannabis Law and Cannabis Regulations will allow the illicit market to continue to thrive. (Dkt. No. 20, Attach. 13 at 13-15). The court agrees with Veriscite.

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (citation omitted).

The balance here tips in favor of Variscite, given that OCM has not begun issuing licenses, and will not begin issuing licenses until, at the earliest, November 21, 2022. Additionally, all of defendants' arguments are undercut, to some degree, by the fact that Variscite only seeks to enjoin the application process in five of the thirteen geographical regions,

27

(Dkt. No. 6 at 2), and defendants could proceed with the licensing process in the other eight regions. *See NPG, LLC*, 2020 WL 4741913, \*12 (finding that the balance of hardships tipped in favor of the plaintiff seeking to enjoin a cannabis regulatory scheme, in part, because the defendant could move forward with granting licenses to some degree).

### E.   Public Interest

The final factor, whether the public interest will be served by granting the injunction, also weighs in Variscite's favor, as "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *see Lowe*, 544 F. Supp. 3d at 816 ("[T]he public interest is best served by enjoining the enforcement of an ordinance that is likely unconstitutional."). Accordingly, Veriscite has met the standard for the issuance of a preliminary injunction, and the court grants its motion.

### V.   Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Variscite's motion for a preliminary injunction (Dkt. No. 6) is **GRANTED**; and it is further

ORDERED that defendants are hereby **ENJOINED** from issuing any cannabis licenses under the CAURD application program held from August 25, 2022 to September 26, 2022, for the following geographic areas: Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn during the pendency of this action or until otherwise ordered by the court; and it is further

ORDERED that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 10, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge

29

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VARISCITE NY ONE, INC.,

                  **Plaintiff,**

      **v.**

STATE OF NEW YORK et al.,

                  **Defendants.**
_____

1:22-cv-1013
(GLS/DJS)

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Kernkamp Law, APC | CHRISTIAN KERNKAMP, ESQ. |
| 1801 Century Park East, 24th Floor | |
| Los Angeles, CA 90067 | |
| | |
| E. Stewart Jones Hacker Murphy, LLP | THOMAS J. HIGGS, ESQ. |
| 28 Second Street - Suite 203 | |
| Troy, NY 12180 | |
| | |
| **FOR THE DEFENDANTS:** | |
| New York State Attorney General | MATTHEW GALLAGHER, ESQ. |
| The Capitol | AMANDA K. KURYLUK, ESQ. |
| Albany, NY 12224 | JEFFREY W. LANG, ESQ. |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Variscite NY One, Inc. commenced this action against the

State of New York, the New York Office of Cannabis Management (OCM), and the Executive Officer of OCM, Christopher Alexander, pursuant to 42 U.S.C. § 1983, alleging a violation of the dormant Commerce Clause. (Compl., Dkt. No. 1.)  Now pending are defendants' motion for reconsideration of the court's November 11, 2022 Memorandum-Decision and Order (hereinafter, "the November Order"), which granted Variscite's motion for a preliminary injunction, or, alternatively, to stay the November Order pending appeal, (Dkt. No. 29), and motion to dismiss the complaint, (Dkt. No. 22).  For the reasons that follow, defendants' motions are denied except as to the State of New York which is dismissed from the action.

## II.  **Background**

Familiarity with the underlying facts are presumed and will be repeated only as relevant.  For a full recitation of those facts, the parties are referred to the November Order.  (Dkt. No. 28 at 2-10.)

## III.  **Standards of Review**

### A.  **Motion to Dismiss**

1.  *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of the complaint where the court lacks subject matter jurisdiction.  "The burden of

proving jurisdiction is on the party asserting it." *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (internal quotation marks and citation omitted). In reviewing a Rule 12(b)(1) motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "Federal Rule of Civil Procedure 12 (b)(1) . . . is the proper vehicle for challenging standing and ripeness." *Benjamin v. Town of Islip*, No. 20 CV 56, 2021 WL 8344132, at *2 (E.D.N.Y. Aug. 12, 2021) (citing *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 742 F. App'x 521, 523 (2d. Cir. 2018)) (other citation omitted).

2. *Rule 12(b)(6)*

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## B.  **Motion for Reconsideration**

Motions for reconsideration proceed in the Northern District of New York under Local Rule 60.1 (formerly Rule 7.1(g)).[1]  "In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements."  *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995).  Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  The prevailing rule "recognizes only three

---

[1]  Northern District of New York Local Rule 60.1 provides:

> Unless otherwise provided by the Court, by statute or rule . . . , a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(a). . . . The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257.

## C.    <u>Motion to Stay Pending Appeal</u>

A court may stay an order pending appeal, but "[a] stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

A court will consider "four well-established factors" in determining whether to issue a stay pending an appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured

5

> absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*461 7th Ave. Market, Inc. v. Delshah 461 Seventh Ave., LLC (In re 461 7th Ave. Market, Inc.)*, No. 20-3555, 2021 WL 5917775, at *1 (2d Cir. Dec. 15, 2021) (citation omitted).

## IV.  Discussion

### A.  Motion to Dismiss

As a preliminary matter, in seeking dismissal defendants raise many of the same arguments asserted in their opposition to Variscite's motion for a preliminary injunction regarding whether the law and regulations at issue violate the dormant Commerce Clause.  (*Compare* Dkt. No. 22, Attach. 1 at 16-25, *with* Dkt. No. 20, Attach. 13 at 4-11.)  For the same reasons articulated in the November Order, (Dkt. No. 28 at 14-23), these arguments are rejected.

#### 1.  *Standing and Ripeness*

Defendants also contend that dismissal is appropriate because Variscite is without standing to sue because it "fails to establish that it has suffered a concrete injury . . . because [it] does not qualify for a [Conditional Adult-Use Retail Dispensary (CAURD)] license under any

6

circumstances," and because OCM "has not made a determination on [Variscite]'s Application." (Dkt. No. 22, Attach. 1 at 10-12). Additionally, defendants argue that Variscite's alleged injury is not redressable because Variscite "is unable to obtain a sufficiently high score to qualify for [a CAURD] license[]. . . . [E]ven if [it] is awarded full points for having a New York conviction" given "the high level of household income for the area in which [the] address [provided in it's CAURD application] is located at the time of conviction." (Dkt. No. 22, Attach. 1 at 14-15.) Finally, defendants assert that Variscite's "alleged injury is remote and speculative, and as such fails to meet the [constitutional] ripeness requirement," and that Variscite's claims are also "prudentially unripe" because "they seek adjudication on issues that are contingent on future events." (*Id.* at 13.) Variscite contends that, its unlawful exclusion from the CAURD application process constitutes an injury, and that "[a]n order enjoining [d]efendants from enforcing the unconstitutional provisions will allow [Variscite] to compete fairly . . . , thereby redressing [its] injury." (Dkt. No. 30 at 1-4, 5.) Further, Variscite argues that its claims are constitutionally ripe because its application will be rejected "due to the unconstitutional residency preferences challenged," and waiting until the application is formally denied

7

would leave Variscite in a position where it would be "inequitable for the [c]ourt to issue an injunction clawing back licenses from other applicants" or grant damages to Variscite. (*Id.* at 4.) Finally, Variscite asserts that the action is prudentially ripe[2] because "no future event is strictly necessary to resolve the issue of whether [d]efendants' CAURD program violates the dormant Commerce Clause." (*Id.* at 5.)

To establish constitutional standing under Article III, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Similarly, the ripeness doctrine dictates that

---

[2] Variscite also calls into question whether "prudential ripeness is a valid doctrine after the Supreme Court's . . . decisions in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014) and *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)." (Dkt. No. 30 at 4); *see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 102 (2d Cir. 2021) (noting that "[s]ince *Lexmark* and *Susan B. Anthony*, we have not directly addressed whether the prudential ripeness doctrine remains good law" and only assumed that it is). The court will take the same approach as the Second Circuit in *Revitalizing Auto Cmtys. Env't Response Tr.,* and "[a]ssum[e]" that the doctrine remains valid. *See id.*

a court should not entertain a case in which the dispute has not yet "matured to a point that warrants decision." *Tri-State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *2 (N.D.N.Y. Feb. 13, 1998) (citing *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 109 (2d Cir.1998)); *see N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical." (internal quotation marks and citations omitted)).

Prudential ripeness "constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it, and allows a court to determine that the case will be better decided later." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (internal quotation marks omitted). "In determining whether a claim is prudentially ripe, we ask whether the claim is fit for judicial resolution and whether and to what extent the parties will endure hardship if decision is withheld." *Id.* (internal quotation marks and alterations omitted).

Here, Variscite has alleged a concrete injury. While Variscite has not

9

had its application formally denied, its "alleged injury is not the denial itself but the disadvantage [it] face[s] in obtaining a license due to the" allegedly unconstitutional licencing scheme. *NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020); *see Northeastern Fl. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group . . . . [T]he 'injury in fact' is the inability to compete on an equal footing in the . . . process, not the loss of [the benefit]." (citations omitted)). For similar reasons, defendants' argument that Variscite's "alleged injury is remote and speculative, and as such fails to meet the ripeness requirement," (Dkt. No. 22, Attach. 1 at 13), is equally unpersuasive. *See NPG, LLC*, 2020 WL 4741913, at *6.

Further, defendants' argument that Variscite's injury is not redressable because under no circumstances would Variscite qualify for a license, (Dkt. No. 22, Attach. 1 at 14-15), is without merit. Variscite is not seeking a license from the court, but, rather, judgement restraining defendants from "enforcing any portions of the Cannabis Law or Cannabis Regulations that favor New York residents over out-of-state residents," and

10

a declaration that certain portions of the law and regulations violate the dormant Commerce Clause, (Compl. at 9-10), relief which the court can provide.

Finally, regarding prudential ripeness, "the claim is fit for judicial resolution," for the reasons already discussed, *see NPG, LLC*, 2020 WL 4741913, at *6 ("The claims are fit for review in part because they are legal in nature. Although whether the [p]laintiffs will succeed in obtaining a license under the current scheme is uncertain . . . , the question of whether the licensing scheme itself is unconstitutionally discriminatory does not depend on future events."), and Variscite would likely "endure hardship if [a] decision is withheld," *In re Methyl*, 725 F.3d at 110, because a delay in resolution could potentially result in Variscite being left without any adequate remedy, for the reasons noted by this court in the November Order. (Dkt. No. 28 at 25-26.) Therefore, Variscite's claims are prudentially ripe.

### 2. Sovereign Immunity

The parties agree New York State should be dismissed from the action pursuant to the Fourteenth Amendment, and that Alexander should not be. (Dkt. No. 30 at 7 ("[Variscite] concedes the Court may dismiss the

11

State of New York."); Dkt. No. 32 at 9-10 ("Defendants agree that the

Eleventh Amendment would not bar an injunction against Alexander.").)

The parties dispute, however, whether OCM is entitled to sovereign

immunity.  (Dkt. No. 22, Attach. 1 at 15-16; Dkt. No. 30 at 6-7.)

 The Eleventh Amendment has long been construed as barring a

citizen from bringing a suit against a state in federal court, under the

fundamental principle of "sovereign immunity."  *See* U.S. Const.

amend. XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."); *Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984).  "State immunity extends not only

to the states, but to state agencies and to state officers who act on behalf

of the state."  *Clare-Lunny v. State of N.Y. United Court Sys.*, No. 6:14-cv-

455, 2014 WL 3819011, at *5 (N.D.N.Y. Aug. 4, 2014) (citing *Puerto Rico*

*Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993) (other

citations omitted).  Sovereign immunity "does not, however, extend to

'suits prosecuted against a municipal corporation or other governmental

entity which is not an arm of the State.'"  *Woods v. Rondout Valley Cent.*

12

*Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Alden v.*

*Maine*, 527 U.S. 706 (1999)).

"In determining whether a putative state entity is, in fact, an arm of

the state, courts look to 'the relationship between the State and the entity

in question.'" *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S.

425, 429 (1997)). To make such a determination, courts consider six

factors:

> (1) how it is referred to in its documents of origin, (2)
> how its governing members are appointed, (3) how
> it is funded, (4) whether its function is traditionally
> one of local or state government, (5) whether the
> state has a veto power over the entity's actions, and
> (6) whether the entity's financial obligations are
> binding upon the state.

*McCrae v. H.N.S. Mgmt Co.*, No. 3:22-cv-00217, 2022 WL 16635390,

at *4 (D. Conn. Nov. 2, 2022) (quoting *Walker v. City of Waterbury*, 253 F.

App'x 58, 60-61 (2d Cir. 2007)). "When all six factors do not align, [courts]

also consider whether a suit against the entity in federal court would

threaten the integrity of the state and expose its treasury to risk and

remain mindful of [their] concern for the state fisc." *Id.* (quoting *Walker*,

253 F. App'x 58 at 60-61). "[W]here a defendant . . . governmental entity

asserts the Eleventh Amendment . . . , the burden falls to that entity to

establish that it is an arm of the state such that it may be entitled to sovereign immunity." *Mallison v. Conn. Office of Early Childhood*, No. 3:21-CV-1641, 2022 WL 6771028, at *3 (D. Conn. Oct. 11, 2022) (internal quotation marks and citation omitted).

In support of their position that OCM is an arm of the State, defendants argue, for the first time in their reply brief, that: (1) that Cannabis Law "created [OCM] which is tasked with overseeing the regulation of medical cannabis, adult-use cannabis, cannabinoid hemp and hemp extracts" and (2) that OCM "is housed within the Division of Alcoholic Beverage Control, although it is independent of that division." (Dkt. No. 32 at 9.) Because defendants' contentions regarding OCM being an arm of the State are raised for the first time in their reply brief they are not properly before the court and will not be considered. *See Farmer v. United States*, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived" (collecting cases)). Even if the court were to consider defendants' arguments, it has some doubt as to whether they would carry defendants' burden of establishing that OCM is an arm of the state. Accordingly, defendant's motion to dismiss is denied on these

14

grounds, except as to New York State, who is dismissed on consent of the parties.

**B.    Motion for Reconsideration**

Defendants request that the court narrow the November Order so as to enjoin the issuance of CAURD licenses only in the Finger Lakes Region.  (Dkt. No. 29, Attach. 4 at 1.)  Defendants argue that such a modification is appropriate because, based on the procedures outlined by the CAURD application process and the number of applications received, Variscite would only be eligible for a licence in the Finger Lakes Region, and, that, at the time the preliminary injunction was briefed, they "had not yet confirmed the number of applicants who had applied for [CAURD] licenses . . . , and[,] thus, did not know whether . . . [Variscite] would be eligible for consideration for a license beyond" the Finger Lakes Region. (*Id.* at 5.)  Additionally, defendants contend that a narrowing of the preliminary injunction is necessary to prevent manifest injustice, because it would allow the four additional geographic regions to open their dispensaries, avoid financial harm to the farmers that have grown marijuana for these regions, and prevent spoilation and diversion of the marijuana into the illegal market.  (*Id.* at 7-9.)  Defendants also assert that

"[o]ther groups will be harmed [if the injunction remains unmodified], including landlords to retail dispensaries, consumers, and [New York] State generally, in the form of lost tax revenue, less economic activity, and limited supplies of safe, tested, and legal product." (*Id.* at 8.) Variscite argues that defendants knew the number of CAURD license applicants before the preliminary injunction was fully briefed and that defendants' hardship argument rehashes the arguments already made in opposition to the motion for a preliminary injunction, which the court rejected. (Dkt. No. 37 at 6-11.)

There are "three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted).

Defendants' argument about their knowledge of the number of CAURD applications, (Dkt. No. 29, Attach. 4 at 5), cannot serve as the basis for their motion because that information was available to them on September 26, 2022, when the CAURD application deadline closed, (Compl. ¶ 22), and before the preliminary injunction motion was even filed.

16

Accordingly, the information does not constitute "new evidence not previously available." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). Additionally, defendants' argument regarding manifest injustice is unpersuasive for the same reasons articulated in the November Order. (Dkt. No. 28 at 26-28 (noting that the balance of hardships tipped in favor of Variscite and that the public's interest was best served by enjoining the CAURD licensing process in the specified five regions). Accordingly, defendants' motion is denied insofar as it seeks reconsideration of the November Order.

## C.   Motion for a Stay Pending Appeal

Finally, defendants argue that the November Order should be stayed during the pendency of their appeal. (Dkt. No. 29, Attach. 4 at 9-13.) Specifically, defendants assert that they are likely to succeed on appeal because in ruling on the preliminary injunction "the Court did not take into consideration that . . . [Variscite] did not score high enough on the application to receive a license." (Dkt. No. 29, Attach. 4 at 10-11.) Defendants also contend that they have shown irreparable injury absent a stay, that Variscite would not be substantially injured if a stay was granted, and that the public interest favors a stay, reiterating the arguments they

17

made in connection with their request for reconsideration of the

preliminary injunction and opposition to the preliminary injunction motion.

(*Compare id.* at 12-13, *with id.* at 7-9, *and* Dkt. No. 20, Attach. 13 at 12-

15.)  Variscite asserts, among other arguments, that "[e]ven if [d]efendants

could show they would deny [Variscite]'s application . . . , [it] still has

standing to maintain this lawsuit and have the unconstitutional program

enjoined," and that defendants "offer nothing but uncited speculation" in

support of their arguments regarding the potential harm they face, as well

as the public's interest, which the court already rejected.  (Dkt. No. 37 at

15-19.)

Here, defendants have not made a strong showing that they are

likely to succeed on the merits because their argument regarding

Variscite's standing is unpersuasive for the reasons mentioned above.

*See supra* Part IV.A.1.   Additionally, for the reasons discussed already,

*see supra* Part IV.A.1., B., and in the November Order, (Dkt. No. 28 at 23-

28), defendants' arguments regarding irreparable harm to them, the

relative lack of harm Variscite faces, and the public interest are equally

unpersuasive.  Accordingly, defendants' motion for a stay of the

November Order is denied.

## D.   Additional Matters

Variscite requested that "[i]f the [c]ourt dismisses any claim, [it] . . . [be] grant[ed] leave to amend." (Dkt. No. 30 at 30.) Because defendants' motion to dismiss is denied, except as to New York State, which Variscite consents to, this request is moot.[3]

Variscite additionally requests the court take judicial notice of certain documents submitted in connection with their opposition to defendants' motion for reconsideration, or, alternatively, a stay. (Dkt. No. 37, Attach. 1.) Because those documents need not be considered by the court in connection with the disposition of the motion, the court declines to take judicial notice of them.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 22) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to the State of New York; and

---

[3]   However, it is worth noting that Variscite did not file a notice of cross-motion or attach a copy of the proposed amended pleading to its papers in accordance with Local Rule 15.1(a).

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk terminate the State of New York; and it is further

**ORDERED** that defendants' motion for reconsideration or stay pending appeal (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 31, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge

20