CASE NO. 22-3128

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

VARISCITE NY ONE, INC.

*Plaintiff and Appellee,*

v.

STATE OF NEW YORK, NEW YORK STATE OFFICE OF
CANNABIS MANGEMENT, and CHRISTOPHER ALEXANDER,

*Defendants and Appellants.*

_____

Appeal from an Order of the United States District Court for the
Northern District of New York, No. 1:22-cv-01013
Honorable Gary L. Sharpe

**BRIEF FOR APPELLEE**

KERNKAMP LAW, APC
Christian Elias Kernkamp
New York Reg. No.: 5721923
ck@kernkamplaw.com
1801 Century Park E 24 FL
Los Angeles, CA 90067
Tel: (213) 214-3030
Attorneys for Plaintiff and Appellant
Variscite NY One, Inc.

1

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rules of Appellate Procedure, Rules 26.1 and 28(a)(1),

Appellee Variscite NY One, Inc. hereby certifies that it has no parent corporation

and no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................5

ISSUES PRESENTED .....................................................................................................6

STATEMENT OF THE CASE ..........................................................................................6

    A.    The CAURD Application Process Favors New York Residents .......................6

    B.    The CAURD Application Program Requires Applicants to Select up to Five Geographic Areas...................................................................................................12

    C.    Plaintiff Satisfied All Application Requirements Except the Unconstitutional New York Requirements and New York Preferences .........................................12

    D.    The Preliminary Injunction ...............................................................................13

STANDARD OF REVIEW...............................................................................................13

SUMMARY OF ARGUMENT .........................................................................................14

ARGUMENT ...................................................................................................................14

I.    POINT I: Plaintiff Established a Likelihood of Success on the Merits.......................14

    A.    Plaintiff Has Standing and the Case Is Not Moot .............................................14

        1.    *Significant presence in New York*.........................................................15

        2.    *Justice involved individual* ...................................................................20

        3.    *Address at conviction* ............................................................................28

    B.    The Cannabis Laws Violate the Dormant Commerce Clause............................29

        1.    *The dormant Commerce Clause applies to state cannabis programs* .................29

        2.    *The law of the dormant Commerce Clause* .........................................32

        3.    *The Cannabis Laws and Cannabis Regulations fall within the first tier analysis* 33

        4.    *The Cannabis Laws and Cannabis Regulations violate the dormant Commerce Clause under the first tier or second tier analysis* ...............................................35

II.    POINT II: Plaintiff Will Suffer Irreparable Harm Absent the Preliminary Injunction ..................38

III.    POINT III: the Remaining Equitable Factors Favor a Preliminary Injunction ..............................40

IV.    POINT IV: Narrowing the Preliminary Injunction ......................................................42

CONCLUSION ...............................................................................................................42

# TABLE OF AUTHORITIES

## CASES

9 NYCRR § 116.4(a)(1) .................................................................................................. 18
9 NYCRR § 116.4(c) ...................................................................................................... 35
*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) ........................................ 24
*Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128 (N.D.N.Y. Nov. 2021) ..................... 38
*Attitude Wellness, LLC v. Vill. of Pinckney*, No. 21-CV-12021, 2022 WL 1050305 (E.D. Mich. Apr. 7, 2022) ..25, 31
*Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, 2023 WL 1798173 (W.D. Wash. Feb. 7, 2023) ...................... 32
*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) ................................................ 32
*Carney v. Adams*, 141 S. Ct. 493 (2020) .................................................................... 24
*Conn. Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226 (2d Cir. 2004) ...................... 38
*Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572 (N.D. Ill. June 9, 2022) .............. 23
*Gallagher v. N.Y. State Bd. of Elections*, 477 F.Supp.3d 19 (S.D.N.Y. 2020). ......... 39
*Gill v. Whitford*, 138 S. Ct. 1916 (2018). ................................................................... 14
*Gonzales v. Raich*, 545 U.S. 1 (2005). ....................................................................... 31
*Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F. 3d 60 (2nd Cir. 2007) .... 13
*Granholm v. Heald*, 544 U.S. 460 (2005) ................................................................... 35
*Gratz v. Bollinger*, 539 U.S. 244 (2003). ................................................................... 24
*Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005) ............... 40
*Lowe v. City of Detroit*, 544 F. Supp. 3d 804 (E.D. Mich. 2021) ........................ 31, 36
*Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 812 (E.D. Mich. 2021) ..................... 35
*Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411 (D. Conn. May 12, 2020). ............ 38
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.1 ................................................................. 7
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(1) ........................................................ 7
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(2)(i) ................................................... 8
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(2)(ii) ............................................ 8, 28
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c) ........................................................... 8
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(1) ...................................................... 8
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(2)(iii) ........................................... 8, 28
N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(2)(i-ii) ............................................... 8
*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021) ...................... 31, 36
*Northeastern Fl. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993)........ 22
*Northeastern Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993) 24
*NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020) ....35, 39
*NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020).31
*NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 WL 4741913 (D. Me. Aug. 14, 2020) .......................... 22
NY CANBS § 11(4) ......................................................................................................... 7
NY CANBS § 1 ............................................................................................................... 6
NY CANBS § 3 ............................................................................................................... 6
*Original Investments, LLC v. State*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021) ........ 32
*Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022) ...................... 29
*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ...................................................... 33
*Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865 (7th Cir. 2009) ............................ 40
*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ....................... 40
*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976). ....................................... 14
*South Dakota v. Wayfair*, Inc., 138 S. Ct. 2080, 2091 (2018) .................................. 35
*Starlight Sugar, Inc. v. Soto*, 114 F.3d 330 (1st Cir. 1997) ..................................... 40
*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001). .... 40
*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2471 (2019) ... 35
*Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 990 (W.D. Mo. 2021) ............................. 31, 36
*United States v. SCRAP*, 412 U.S. 669 (1973). ......................................................... 21
*United States v. SCRAP*, 412 U.S. 669 (1973). ......................................................... 15

4

## PRELIMINARY STATEMENT

Laws that discriminate against out of state business are virtually per se unconstitutional. A discriminatory law can be upheld only if it serves a legitimate local interest that **cannot** be served by a reasonable non-discriminatory alternative. Defendants attempt to confuse this standard by touting the purported benefits of the CAURD License program. Even assuming that providing benefits to persons convicted of cannabis crimes is a legitimate local interest, Defendants do not even attempt to argue that no alternative program could serve that purpose. Although Defendants bear the burden to prove that no alternative exists, it is easy to disprove. Defendants could have, for example, provided job training programs, tax deductions, or lower admission standards and tuition to public higher education institutions. Instead, Defendants chose to discriminate against out-of-state interests in violation of the dormant Commerce Clause.

Defendants dispute Plaintiff's standing to challenge the CAURD License program. Plaintiff has standing because it applied for a CAURD License and is ineligible because of the challenged requirements. In response, Defendants claim that Plaintiff will not receive a License even if its application is scored. Defendants' argument does not moot the case because Defendants unconstitutionally rejected Plaintiff's application, and Plaintiff remains ineligible for a License. Moreover, Plaintiff has been harmed by Defendants' two-tiered application process whereby New Yorkers pay a $2,000 fee to have their applications scored, but applicants that do not meet Defendants' unconstitutional requirements must pay $2,000 and fund litigation to receive even a hypothetical score of how Defendants would score the application if the unconstitutional rules were not enforced. Plaintiff is entitled to proceed to judgment and recover its attorneys' fees. Furthermore, as discussed below, Defendants have not shown that they would reject Plaintiff's application if it were eligible.

5

As to the preliminary injunction factors, the district court correctly found that they favor Plaintiff and an injunction should issue. To the extent there was ever any doubt about the balance of harms, that is now resolved because the Second Circuit narrowed the Preliminary Injunction to cover only the Finger Lakes geographic area, which represents only 18 of the total 300 Licenses. Thus, Defendants are able to issue 94% of the Licenses.

## ISSUES PRESENTED

1.      Does Plaintiff have standing to challenge New York's CAURD License application program?

2.      Have Defendants met their burden to show that the district court's Preliminary Injunction was an abuse of discretion because it rests on clearly erroneous findings of fact or the application of an incorrect legal standard?

## STATEMENT OF THE CASE

### A.      **The CAURD Application Process Favors New York Residents**

#### 1. *The Cannabis Law*

On March 31, 2021, the State of New York enacted the Marihuana Regulation & Taxation Act, with the short title of "Cannabis Law." NY CANBS § 1.[1]

Under Section 3 of the Cannabis Law, a person (including an entity) is allowed to be an "applicant" for a cannabis license if that person "has a significant presence in New York state, either individually or by having a principal corporate location in the state; is incorporated or otherwise organized under the laws of this state; or a majority of the ownership are residents of this state." NY CANBS § 3.

_____

[1]      The Cannabis Laws and Cannabis Regulations are different for tax-paying and nonprofit entities. The Complaint and this application focus on the laws and regulations for tax-paying entities.

Under Section 11 of the Cannabis Law, the OCM and the executive director have the power to prescribe the form of applications for cannabis licenses. NY CANBS § 11(4).

### 2. *The Cannabis Regulations*

On August 3, 2022, the OCM adopted part 116 of Chapter II of Subtitle B of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (the "Cannabis Regulations"). N.Y. Comp. Codes R. & Regs. tit. 9 ("NYCRR"), § 116.1, *et seq*.

Section 116.4(a) of the Cannabis Regulations lists the "minimum requirements [that] must be met to become an eligible applicant" for an adult-use recreational cannabis dispensary license.

***Significant presence in New York***. Under Section 116.4(a)(1), an applicant must have "(i) a significant presence in New York State, either individually or by having a principal corporate location in the state; (ii) it is incorporated or otherwise organized under the laws of New York State; or (iii) a majority of the ownership of the applicant are residents of New York State by being physically present in the state no less than 180 calendar days during the current year or 540 calendar days over the course of three years[.]" NYCRR § 116.4(a)(1).

***Cannabis conviction in New York***. Under Section 116.4(a)(2), if an applicant is an entity with one or more individual owners, the applicant must have one or more "justice involved" individual owners who collectively hold at least 51% of the equity of the applicant. A justice involved individual "(a) was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; (b) had a parent, legal guardian, child, spouse, or dependent who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; or (c) was a dependent of an individual who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one[.]" NYCRR §

7

116.4(a)(2)(i).

*Address at time of conviction*.  Under Section 116.4(a)(2), the applicant must provide proof of the justice involved individual's residence at the time of the individual's arrest or conviction.  NYCRR § 116.4(a)(2)(ii).  Plaintiff alleged on information and belief in the Complaint that Defendants will score an applicant higher if the individual's residence at the time of the individual's arrest or conviction was in New York.

*Evaluation criteria*.  Section 116.4(c) sets forth the criteria by which Defendants will evaluate the CAURD applications.  NYCRR § 116.4(c).  Under Section 116.4(c)(1), the application criteria includes whether the justice involved individual himself/herself (as opposed to a relative) was convicted of a cannabis crime under New York law.  NYCRR § 116.4(c)(1).

Under Section 116.4(c)(2), the application evaluation criteria includes whether the justice involved individual's primary residence at the time of the arrest or conviction (i) had a historically high rates of arrest, conviction, or incarceration for marihuana-related offenses or (ii) had historically low median income. NYCRR § 116.4(c)(2)(i-ii).

*Neither the Cannabis Law nor the Cannabis Regulations provide that Defendants may score the median income of the individual's address at conviction by comparing the income of the census tract where the applicant lived to the income of the county or state in which the applicant lived*.

Under Section 116.4(c)(2), the application evaluation criteria includes whether the justice involved individual lived-in housing *provided by New York Public Housing Authority*.  NYCRR § 116.4(c)(2)(iii) (emphasis added).  Plaintiff alleged on information and belief in the Complaint that Defendants will score an applicant higher if the individual's residence at the time of the individual's arrest or conviction with a historically high rate of arrest, conviction, or incarceration for Marihuana-related offenses and historically low median income was in New York.

8

### 3. *Frequently Asked Questions Document*

During the application period, the OCM published a *Conditional Adult-Use Retail Dispensary Frequently Asked* Questions document. (JA 147.) The FAQ document states:

2. Who is eligible for CAURD [Licenses]?

. . . .

**To be eligible under the qualifying business criteria, at least thirty percent (30%)**

**of the applicant must be owned by an individual who is/has:**

• Justice involved, as described in question 17;

• Qualifying business experience, as described in question 29;

• Sole control of the applicant, as described in question 6; and

• **Significant presence in New York State, as described in question 4.**

(*Id*. (emphasis added).)

The FAQ document further states:

4. **What does it mean to have "significant presence" in New York State?**
CAURD licensees must meet the eligibility requirements listed above
in question 2, including having a "significant presence," in New York
State. **Significant presence means that the person with sole control
and at least thirty percent (30%) ownership of your retail dispensary
must have** residency (live in), assets (vehicles, land, etc.), real property
(this includes primary, secondary, and/or rental homes), a bank
account, or some other connection with or in New York State.
If you are not sure if your owner has "significant presence" in New
York State, please contact the Office at: licensing@cannabis.ny.gov.

(JA 148 (emphasis added).)

### 4. *The Cannabis License Application*

Defendants required applicants to submit their applications online through

Defendants' New York Business Express application website. Defendants accepted applications through the system from August 25, 2022 through September 26, 2022. (Application (JA 69).)

The login page for the New York Business Express application website provides an "Overview" of the application requirements. It states: "To be eligible as an individual or as a taxable entity, applicants must meet all of the following requirements: · A significant presence in New York State · Majority of the retail dispensary business is owned and controlled by a justice involved person (or people) with qualifying business ownership experience · . . . ." It also provides a definition of justice involved person: "Justice Involved means someone who has been convicted of a marihuana-related offense in New York State before 3/31/2021 or is the spouse, child, legal guardian, or dependent of someone who has been convicted of a marihuana-related offense in NYS before 3/31/2021." (*Id.*).

The application for tax-paying entities requires the applicant to check a box stating that a person with sole control over the applicant has a significant New York presence. If the applicant does not check that box, the applicant will not be allowed to proceed to the next webpage of the application. ***Instead, the applicant will receive the error message: "The business principal with sole control over the CAURD applicant must have significant presence in New York State to be eligible for a CAURD license."*** (Application Error Message (JA 73) (emphasis added).)

The application for taxable entities also requires the applicant to list individuals owning at least 51% total equity of the applicant who are justice involved. The application again explains that "A justice-involved individual is an applicant or an individual with ownership interest in an applicant that has been convicted of a marihuana-related offense in New York State before March 31, 2021, or is the parent, spouse, child, guardian, or dependent of someone who has been convicted of a marihuana-related offense in New York State before March 31,

10

2021." (Application (JA 74).)

The application further explains that a justice involved individual must have a cannabis conviction under New York law:

> For the justice-involved criteria, unless otherwise prohibited under Cannabis Law Section 137, a marihuana-related offense is defined as: An offense described under article 221 ***of the New York State Penal Law*** (Offenses Involving Marihuana) prior to its repeal on March 31, 2021; or An offense described under article 220 or section 240.36 ***of the Penal Law*** where the substance involved was marihuana, that occurred prior to the creation of article 221 in 1977; or An arrest for an offense ***as described above*** that ultimately led to a conviction for another offense, such as non-drug offense, violation, or misdemeanor, by means of a plea deal or other mechanism.

 (*Id*. (emphasis added).)

The application requires applicants to check a box for yes or no to the question: "Has the above owner been convicted of a marihuana-related offense in New York State before March 31, 2021, or are they the parent, spouse, child, guardian, or dependent of someone who has been convicted of a marihuana-related offense in New York State before March 31, 2021?" If the applicant selects no, the applicant will not be allowed to proceed to the next webpage of the application, and instead will receive the error message: "In order to be eligible for a CAURD license, an individual with sole control must hold at least 30% of the entity and meet all CAURD eligibility criteria and justice involved invidiuals [sic] must hold at least 51% of the entity." (Application Error Message (JA 76).)

On the next webpage of the application, the applicant must upload documentation of the justice involved individual's conviction for the New York marijuana crime. (JA 78.)

The application also asks, "Has the applicant or does the applicant intend to

apply for ***New York State certified*** Minority-Owned Business, Woman-Owned Business, Minority Woman-Owned Business or Service-Disabled Veteran-Owned Business status?" (JA 80 (emphasis added).)

**B.      The CAURD Application Program Requires Applicants to Select up to Five Geographic Areas**

Defendants required CAURD applicants to select up to five geographic regions of New York State for which the application would be considered. (JA 83.) Defendants divided the State into fourteen geographic regions: Brooklyn; Capital Region; Central New York; Finger Lakes; Long Island; Manhattan; Mid-Hudson; Mohawk Valley; North Country; Queens; Southern Tier; Staten Island; the Bronx; and Western New York. (JA 84.)

**C.      Plaintiff Satisfied All Application Requirements Except the Unconstitutional New York Requirements and New York Preferences**

Plaintiff applied in the CAURD Application Program. (JA 66 at ¶ 10.) Plaintiff satisfies all requirements of the Cannabis Law and Cannabis Regulations to apply in the CAURD Application Program except that its 51% owner's cannabis conviction occurred under Michigan law rather than New York law and he has no significant presence in New York. (JA 66 at ¶ 13.)

Plaintiff is 51% owned by an individual who has a cannabis conviction under Michigan law. (JA 28 ¶ 5, Ex. 1.) At the time of his arrest and conviction, he lived in an area that (i) had a historically high rates of arrest, conviction, or incarceration for marihuana-related offenses and (ii) had historically low median income in Michigan according to a study published by the State of Michigan. (JA 66, Ex. 9.) The individual resides in Michigan and has no property or other significant presence in New York. (JA 28 ¶ 4.) If Plaintiff is selected for a license, the 51% owner will have sole control within the meaning of Cannabis Regulation section 116.4(b). (JA 66 ¶ 11.) Plaintiff's 51% owner owned more than 10% of a

business that was profitable for more than two years. (JA 28, ¶¶ 6-7 Exs. 6-7.)

Plaintiff identified the following five geographic areas in its CAURD Program Application: Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn. (JA 66 ¶ 12.)

### D.    The Preliminary Injunction

On November 10, 2022, the district court issued the Preliminary Injunction, which prohibited Defendants from issuing CAURD Licenses to for-profit applicants in the five geographic areas where Plaintiff applied. This restricted Defendants' ability to issue 54 of the 150 available CAURD Licenses. (Docket 28.)

On November 22, Defendants moved for reconsideration of the Preliminary Injunction. (Docket 29.) Defendants had earlier moved to dismiss the Complaint on November 2. (Docket 22.) On January 31, the district court denied both of Defendants' motions in a single order, except that the district court dismissed the State of New York by consent of the parties. (Docket 46.)

Defendants appealed the Preliminary Injunction and moved to stay or narrow it to cover only the Finger Lakes geographic area, which was Plaintiff's first choice in its application. This Court denied the motion as to the stay but granted the motion to narrow the Preliminary Injunction to cover only the Finger Lakes geographic area.

In March, Defendants doubled the number of CAURD Licenses to 300. ***The current Preliminary Injunction prohibits Defendants from issuing only 18 of the total 300 CAURD Licenses for tax-paying entities (and Defendants issue additional licenses to nonprofit applicants)***.

## STANDARD OF REVIEW

The district court has wide discretion in determining whether to grant a preliminary injunction, and the Second Circuit reviews a district court's determination only for abuse of discretion. *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F. 3d 60, 66 (2nd Cir. 2007). Abuse of discretion consists of clearly

erroneous findings of fact or the application of an incorrect legal standard. *Id*. In analyzing whether the district court abused its discretion, the Second Circuit may affirm on any ground supported by the record. *Id*.

## SUMMARY OF ARGUMENT

1.    Plaintiff has standing and the case is not moot because Plaintiff suffered a concrete injury.

2.    The challenged provisions of the Cannabis Laws and Cannabis Regulations discriminate against out-of-state businesses on their face, and the first tier dormant Commerce Clause analysis applies.  Thus, the Cannabis Laws and Cannabis Regulations are per se unconstitutional.  Even if the second tier analysis applied, the Cannabis Laws and Cannabis Regulations would be unconstitutional because the burden imposed on interstate commerce of excluding applicants from the majority of the country exceeds the local benefit.

3.    The preliminary injunction factors all favor Plaintiff.  To the extent there was ever a question of the balance of hardships, that was resolved when the Second Circuit narrowed the Preliminary Injunction to affect only 6% of the available Licenses.

## ARGUMENT

## I.    POINT I: PLAINTIFF ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    <u>Plaintiff Has Standing and the Case Is Not Moot</u>

To demonstrate Article III standing, a plaintiff needs only "a personal stake in the outcome" that is "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018).  Standing is satisfied where (as here) the plaintiff would "stand to profit in some personal interest" from the relief sought. *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 39 (1976).  Even

"an identifiable trifle is enough" to create standing. *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973).

       1.      ***Significant presence in New York***

    ***Plaintiff is ineligible for a CAURD License***.  Plaintiff has standing to challenge this requirement because Plaintiff cannot satisfy the requirement that the "person with sole control" over Plaintiff has a significant presence in New York. (Decl. Gay (JA 28).)  Plaintiff is injured by this requirement because Plaintiff is ineligible for a CAURD License.

    Defendants confirmed the requirement that the person with sole control have a significant presence in New York on September 22, 2022, approximately two weeks before the application period closed.  Defendants published on their website the *Conditional Adult-Use Retail Dispensary (CAURD) Frequently Asked Questions*.  (JA 148.)  That Document provides:

> 4.  What does it mean to have "significant presence" in New York State?
>
> ***CAURD licensees*** must meet the eligibility requirements listed above in question 2, including ***having a "significant presence," in New York State. Significant presence means that the person with sole control and at least thirty percent (30%) ownership of your retail dispensary must have*** residency (live in), assets (vehicles, land, etc.), real property (this includes primary, secondary, and/or rental homes), a bank account, or some other connection with or in New York State.

(*Id*. at 3 (emphasis added).)  ***Far from distancing themselves from this FAQ document, Defendants rely on it in this appeal***.  (Brief at 7, 24, 36, 39 (all citing JA 148).)

    Defendants confirmed this requirement in the application.  Defendants forced Plaintiff, and all applicants for CAURD Licenses, to apply through the New York Business Express application website.  As Defendants' own exhibits show, the

application software required Plaintiff to check a box attesting that Mr. Gay has a significant presence in New York, or the application software would not allow Plaintiff to proceed with the application.

The attestation states:

> I attest that the business principal with sole control over the CAURD applicant has significant presence in New York State. Significant presence can be established through physical presence or residency in New York State, holding assets in New York State, maintaining a bank account in New York State, owning real estate or property in New York State, or as otherwise determined by the Office.

> The Office reserves the right to ask the applicant to submit additional documentation to verify this attestation.

(Application at 20 (JA 221).)

Plaintiff attempted to proceed with its application without checking the box, but Plaintiff received the error message, ***"The business principal with sole control over the CAURD applicant must have significant presence in New York State to be eligible for a CAURD license" and the website would not proceed to the next application page.*** (Error Message (JA 73) (emphasis added).) Thus, Plaintiff had no choice but to check the box, incorrectly attesting that Mr. Gay has a significant presence in New York. (Application at 4 (JA 181).)

In order to submit the application, however, the software required Plaintiff to attest, "I acknowledge that any failure to follow these conditions may result in the revocation of the license and may prevent the ability of the entity or any listed owners to be granted any adult-use cannabis license in the future." (*Id*. at 18.) Among the required attestations is, "The applicant attests that the submitted application is complete and accurate . . . ." (*Id*. at 19.)

Thus, Defendants placed Plaintiff in a "heads I win, tails you lose" situation. Plaintiff's choices were to not attest that Mr. Gay has a significant presence in New

16

York, and lose the opportunity to submit the application, or state that Mr. Gay has a significant presence in New York, and have the application rejected for containing a false attestation.

*The District Court recognized Plaintiff's ineligibility in the Preliminary Injunction*. Defendants' argument that Plaintiff lacks standing to challenge the significant presence requirement because Plaintiff is incorporated in New York misses the point. Regardless of Plaintiff's significant presence in New York because of its incorporation, Plaintiff cannot participate in the application program or receive a License because its person with sole control lacks a significant presence in New York.

The District Court recognized that Plaintiff does not satisfy the significant presence requirement, notwithstanding that Plaintiff is incorporated in New York, because Mr. Gay has no significant presence here. (Preliminary Injunction [ECF 28] at 9 n.3.)

Defendants attempt to wash away all of the above by stating that the District Court relied on a single line in the CAURD application website, which Defendants describe as a non-binding guidance document. (Brief at 23.) The New York Business Express application website is not a non-binding guidance document, but rather is the mandatory (and only) way for applicants to submit their applications. The District Court did not rely on "a single line" in the application website, but rather on a mandatory attestation, without which applicants could not proceed with the application.

*Defendants' self-serving statements do not support their position*. Notwithstanding that Mr. Gay has shown he has no connection to New York, defense counsel claims Mr. Gay satisfies the requirement for a significant presence in New York. Defense counsel argues that Mr. Gay satisfies the requirement because of a single amorphous line in the FAQ document that significant presence may be satisfied by "some other connection with or in New York State." (Brief at 24.)

17

Defense counsel claims this amorphous statement includes ownership of an applicant that is incorporated in New York. (*Id*.)

Defense counsel has no support for her position. The amorphous statement "some other connection with or in New York State" does not appear in any Cannabis Law or Cannabis Regulation. Notwithstanding Defense counsel's repeated citations to "9 NYCRR § 116.4(a)(1)'s disjunctive criteria," the line does not appear there. Moreover, defense counsel's proposed interpretation of that sentence does not make sense. If the applicant's significant connection to New York is sufficient to satisfy the person with sole control's connection to New York, why are there separate sections of the application and FAQ document addressing the significant presence of the individual with sole control of an applicant entity?

Defense counsel has no support for her interpretation of the amorphous statement. See Ninth Circuit Model Jury Instruction 3.7 ("Questions, statements, objections, and arguments by the lawyers are not evidence. The Lawyers are not witnesses."). The brief cites only the declaration of Herb Barbot and the FAQ document. (Brief at 25 (citing JA 133, 148).) *But those sources do not state that the person with sole control satisfies the requirement if the applicant is incorporated in New York. (Id. (citing JA 133, 148).)* Thus, Defendants offer nothing more than their lawyer's uncited statement of how she believes Defendants' will attempt to avoid the unconstitutional requirement they created.

Defense counsel states: "OCM has granted a license to at least one applicant that is likewise incorporated in New York but owned by a non-resident." (Brief at 25.) Here too, defense counsel offers no citation for her statement, and the statement is entitled to no consideration. Even if the Court were to consider defense counsel's unsupported statement, it does nothing to further her argument. Defense counsel does not state that the non-resident person with sole control satisfies the requirement for a significant presence to New York State *because of* his/her ownership of the applicant. The non-resident may satisfy the significant presence in New York

18

requirement for another reason, such as owning real property in New York or working in New York.  (JA 148.)

Defense counsel repeatedly calls her evidence "uncontroverted."  But as noted above, defense counsel offers no evidence at all.  She offers only her unsupported statements as counsel.

Moreover, Defendants' claim that their evidence is uncontroverted is disingenuous. Defendants have thwarted Plaintiff's discovery attempts for months, and ***still*** have not responded to Plaintiff's discovery demands.  Plaintiff served on Defendants early requests for production under Federal Rules of Civil Procedure 26(d)(2) and 34(b)(2) on December 6, 2022.  (Docket 56.)  Plaintiff and Defendants discussed the Requests for Production in multiple emails, including at a minimum on December 8 and 9.  (*Id.*)  In that email exchange, Defendants unilaterally decided that discovery was "premature," notwithstanding the Rules of Civil Procedure cited above, and they "rejected" service of the Requests for Production, notwithstanding that no provision of the Rules of Civil Procedure or Local Rules allows a party to unilaterally reject service of discovery and thereby avoid their discovery obligations. (*Id.*)  As support for their position, Defendants cited irrelevant Local Rules.  (*Id.*)

The parties were required to hold their Rule 26 conference of counsel by December 14, which would trigger Defendants' 30 days to respond to the Requests for Production.  (*Id.*)  Defendants refused to meet by the deadline, and instead submitted an after-the-fact letter request to the magistrate to adjourn the Rule 16 conference.  (*Id.*)  The magistrate granted the request.  (Docket 41.)

On February 6, 2023, after the district court denied Defendants' Motion for Reconsideration of the Preliminary Injunction and Defendants' Motion to Dismiss, Plaintiff filed a Letter Request for the Court to set a Rule 16 conference.  (Docket 49.)  In the Letter Request, Plaintiff again reminded Defendants that Plaintiff sought the Rule 16 conference to begin discovery.  The Court scheduled the Rule 16 conference for March 1.

19

The parties held the mandatory meet and confer on February 21, which began the running of Defendants' 30 days to respond to Plaintiff's Requests for Production. (Docket 56.) On February 22, the parties filed a Joint Case Management Plan. (Docket 52.) In it, Plaintiff reminded Defendants that they had served early Requests for Production under Rule 26(d)(2).

Nevertheless, Defendants refused to comply with their discovery obligations. On approximately April 4, Plaintiff wrote to Defendants and stated that Defendants' responses to the Requests for Production were nearly two weeks late and Defendants had waived all objections. (Docket 56.) Plaintiff informed Defendants that if Defendants did not commit to providing a full production, Plaintiff would begin the motion to compel process. (Docket 56.) Defendants responded that they "previously rejected in writing plaintiff's Request for production of documents on grounds that they were pre-mature and [Plaintiff] never re-served them following our Rule 16 conference. (Docket 56.) Thus, it is Defendants' position that we have not been served with the Demand and as such we are not late in our responses nor have we waived any objections."

In light of Defendants flagrantly flouting the Rules of Civil Procedure, Plaintiff had to request a conference with the magistrate regarding the discovery dispute. (Docket 56.) Plaintiff later agreed to withdraw its request for a discovery conference based on Defendants' representation that time would be better spent finalizing a settlement. To date, Defendants have done neither.

Defendants now rely on their skirting of their discovery obligations to claim their evidence is uncontroverted.

### 2. *Justice involved individual*

Defendants' sole argument in this section is that Plaintiff's challenge is moot based on Defendants' statement that Plaintiff will not receive a high enough score to obtain a CAURD License. Defendants' argument fails for multiple reasons.

***First***, even if this Court were to consider Defendants' proffered hypothetical

score of Plaintiff's application, Defendants cannot moot this case. Defendants will deny 67% of the applications, as 903 entities applied for 150 Licenses, which Defendants later expanded to 300 Licenses. Applicants who satisfy Defendants' unconstitutional requirements paid a $2,000 application fee to have Defendants process their applications and decide whether to grant them a License. (Decl. Barbot, Ex. G at 51 (JA 252).) *Plaintiff, who satisfies every License requirement except the unconstitutional requirements, had to pay the $2,000 application fee plus fund a district court lawsuit and an appeal to have Defendants prepare even a hypothetical score with the unconstitutional provisions allegedly ignored*.

By creating a two-tiered application system that places a higher cost of application (by orders of magnitude) on applicants that do not satisfy the unconstitutional requirements, Defendants harmed Plaintiff. *See United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973) (stating that "an identifiable trifle" is enough to provide standing). This burden placed on applicants that do not satisfy Defendants' unconstitutional residency preference violates the dormant Commerce Clause. *Plaintiff has shown a violation, and Plaintiff is entitled to proceed to judgment and recover its attorneys' fees regardless of how Defendants might score its application.*

In fact, Plaintiff's counsel has repeatedly asked Defendants for the score of a similarly situated applicant also co-owned by the owners of Plaintiff. Defendants refuse to provide the score or to even inform Plaintiff whether Defendants considered that application at all since its justice involved individual has no significant presence in New York. That applicant, like Plaintiff, would have to fund a lawsuit to have Defendants consider its application. Defendants do not place that burden on applicants that satisfy their unconstitutional New York requirements and New York preferences.

*Second*, Plaintiff suffered and continues to suffer harm from the challenged Cannabis Laws because Defendants have not and cannot process Plaintiff's

21

application and make a decision on the merits of whether to grant Plaintiff a License.

Defendants tell this court (in a self-serving declaration) how they would hypothetically score Plaintiff's application "if" the unconstitutional Cannabis Laws and Cannabis Regulations did not exist. But those Laws do exist, and they exclude Plaintiff from the License application program. Because of the unconstitutional discrimination against Plaintiff, Plaintiff is unable to have Defendants process its application and give Plaintiff a valid, non-hypothetical decision on whether to grant or deny it a License.

The District Court addressed Defendants' argument in its combined Order on Defendants' Motion for Reconsideration of the Preliminary Injunction and Defendants' Motion to Dismiss. The District Court rejected the argument because Plaintiff suffered the harm of being excluded from the CAURD License application program regardless of how Defendants might score its application if the unconstitutional Cannabis Law and Cannabis Regulations did not exist, and because the District Court can remedy the harm by enjoining the unconstitutional provisions:

> Here, Variscite has alleged a concrete injury. While Variscite has not had its application formally denied, its "alleged injury is not the denial itself but the disadvantage [it] face[s] in obtaining a license due to the" allegedly unconstitutional licensing scheme. *NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020); *see Northeastern Fl. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group . . . . [T]he 'injury in fact' is the inability to compete on an equal footing in the . . . process, not the loss of [the benefit]." (citations omitted)). For similar reasons, defendants' argument that Variscite's "alleged injury is remote and speculative, and as such fails

22

to meet the ripeness requirement," (Dkt. No. 22, Attach. 1 at 13), is equally unpersuasive. *See NPG, LLC*, 2020 WL 4741913, at *6.

> Further, ***defendants' argument that Variscite's injury is not redressable because under no circumstances would Variscite qualify for a license, (Dkt. No. 22, Attach. 1 at 14-15), is without merit. Variscite is not seeking a license from the court, but, rather, judgement restraining defendants from "enforcing any portions of the Cannabis Law or Cannabis Regulations that favor New York residents over out-of-state residents," and a declaration that certain portions of the law and regulations violate the dormant Commerce Clause, (Compl. at 9-10), relief which the court can provide***.

(Order on Mot. for Reconsideration/Mot. to Dismiss at 10-11 (Docket 46).)

In response, Defendants argue that the District Court was wrong because a plaintiff does not have standing to sue when unconstitutionally excluded from a government program unless that exclusion is based on race. (Mot. at 16-17.) Defendants offer no relevant authority for that remarkable position.

Even if Defendants could show they would deny Plaintiff's application on the facts, Plaintiff still has standing to maintain this lawsuit and have the unconstitutional program enjoined. In fact, a plaintiff need not apply in a licensing program at all to have standing to challenge it.

In *Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572, at *4 (N.D. Ill. June 9, 2022), Illinois took applications for cannabis licenses until January 2020. In September 2020, the state announced that there were more applications with perfect scores than there were available licenses, so the state would hold lotteries to select among the perfect-scoring applicants. *Id*. The state held the lotteries in July and August 2020 and announced the winners in September 2020. *Id*. at *5.

The plaintiffs filed the lawsuit in March 2022. *Id*. at *6. The court concluded the plaintiffs had standing to challenge the program notwithstanding

23

that they had never even applied and brought the lawsuit more than two years later. *Id*. at *9. Notably, the plaintiffs would not have been excluded from the licensing program if they had applied. Rather, Illinois accepted applications from anyone, and just gave additional points to local residents. *Id*. at *3. The plaintiffs would not, however, have qualified for the tie-breaker lottery because they could not have received perfect scores for their applications because they did not qualify for local residency points.

The court cited several Supreme Court cases for the proposition that an applicant need not show they would have received the benefit (i.e., been selected for a cannabis license) to have standing, as the injury in fact is the inability to compete on an equal footing in the process for obtaining benefit. *Id*. at *9 (citing *Northeastern Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *Carney v. Adams*, 141 S. Ct. 493, 500 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995)). After finding that the plaintiffs had standing to challenge the unconstitutional program even though they never applied in it, the court did not even consider the plaintiffs' failure to apply in the likelihood of success analysis. *Id*. at 12-15.

The court did, however, deny the preliminary injunction based on the balance of equities for reasons not present in this case, such as the plaintiffs waiting to bring the lawsuit until more than two years after the licensing program closed and the winners had been chosen and a tie-breaking lotteries were held; state court judges had ruled in multiple state-court cases brought by participants in the licensing program and lotteries, and a the preliminary injunction would have upended those state court decisions; winners of the lotteries had made investments before the plaintiffs brought the lawsuit; and because the plaintiffs had not applied, the court could not determine if the plaintiffs had a reasonable chance of being eligible for the lottery or even determine which geographic area's lottery the

24

plaintiffs would be in. *Id*. at 17-20. The court concluded that "although no single argument by the Department is conclusive on its own, together the arguments show why equitable relief (here, an injunction) is unwarranted." *Id*. at *8.

Thus, *Fitch* is distinguishable from the present case because, even if the Court concludes Defendants have shown on the facts that Plaintiff's application will be denied, this case lacks the many factors the *Fitch* court considered in combination when denying the preliminary injunction on the balance of equities.

In *Attitude Wellness, LLC v. Vill. of Pinckney*, No. 21-CV-12021, 2022 WL 1050305, at *1 (E.D. Mich. Apr. 7, 2022) the village allowed anyone to apply for the cannabis license, regardless of whether the applicant had any connection to the village. The village did, however, award unconstitutional points for local residency when scoring the applications. *Id*.

Three applicants applied for the village's only license. The plaintiff submitted an application and received a real score (not a hypothetical score "if" the application were allowed, as is the case here). The plaintiff did not receive a high enough score to obtain the license, and the license was awarded to another applicant. The plaintiff sued because the winning applicant received the unconstitutional bonus points for local residency.

Because the plaintiff's application was allowed into the program and scored, the plaintiff knew before bringing the lawsuit that it could not receive a license under any circumstance. *Id*. at *2. The plaintiff's application scored third place, and even if the unconstitutional bonus points for local residency were stricken, the first, second, and third place finishers were the same.

Moreover, the plaintiff's harm was different from the harm in this case. In *Attitude Wellness*, the plaintiff's irreparable harm was being prevented from selling cannabis, rather than the irreparable harm of being excluded from the application process: the plaintiff "argues that the [scoring method] caused irreparable harm by preventing [the plaintiff] from entering the Village's retail cannabis market." *Id*. at

\*7.

In this case, no matter what Defendants claim they would do with Plaintiff's application "if" they allowed it into the CAURD Application Program, they cannot escape the fact that Plaintiff's application is ineligible under the Cannabis Law and Cannabis Regulations in violation of the U.S. Constitution. Plaintiff has suffered, and continues to suffer, the irreparable harm of being excluded from the program regardless of what the outcome would be "if" Plaintiff's application were included.

**Third**, even if a hypothetical application score could moot a case, Defendants have not shown they will deny Plaintiff's application because Defendants' method of scoring conflicts with the Regulations and is not permissible. Defendants allege that Plaintiff's "low score was largely due to [Mr. Gay] living in a high-income area at the time of his arrest." (Mot. at 16.) Defendants' method of awarding points based on the area of residence is unlawful because it conflicts with the Cannabis Regulations.

Defendants state that they calculate an applicant's score by taking the median household income ("MHHI") of the census tract where the justice involved individual lived and comparing it to the MHHI of the county or region containing the census tract. (Sup. Dec. Barbot ¶20 (JA 380-81).)

Defendants' scoring method is not allowable because it is arbitrary, capricious, and inconsistent with the Regulations. The Regulations provide a mandatory method of scoring ("shall be evaluated"). 9 NYCRR § 116.4(c). The Regulations allow the OCR to determine the weight given to each category ("shall be weighted as determined by the Office"), but they do not allow the OCR to rewrite the evaluation criteria. The Regulations require the OCR to evaluate an address relative to areas with low MHHI, but they do not allow the OCR to then scale the area's MHHI income to the county or region where it sits.

Moreover, Defendants' scoring method is irrational and inconsistent with the purpose of the Regulations because it punishes justice involved individuals who live

26

in poor counties (where the individual's census tract MHHI is high compared to the rest of the county) and rewards individuals who live in wealthy counties (where the individual's census tract MHHI is low compared to the rest of the county). In this case, the arbitrary evaluation method would punish Mr. Gay, who lives in a poor county in Michigan, and reward applicants who live in affluent counties like New York County.

In their Reply Memorandum of Law in Support of Motion for a Stay Pending Appeal, filed in this Court on March 7, Defendants argue that the Court should not consider the obvious deficiencies with Defendants' scoring method. ***Defendants' state that "Plaintiff attempts to rebut mootness by raising claims—not contained in its complaint—that OCM's scoring methodology conflicts with OCM's regulations and is arbitrary and capricious. . . . Plaintiff cannot use its opposition to a motion to smuggle new state-law claims into the case."***

***Defendants' argument is disingenuous. Defendants never disclosed their scoring method publicly until the Supplemental Brief of Herb Barbot, filed on November 22, 2022—months after Plaintiff filed the Complaint and after the district court issued the Preliminary Injunction. (JA 380.) Defendants, not Plaintiff, raise new arguments and theories after the Preliminary Injunction issued that were available to them before the Preliminary Injunction issued, and the Court should not even consider this argument. Regardless, Plaintiff may properly dispute the new argument Defendants improperly raise, including by showing that Defendants' scoring method is impermissible.***

***Fourth***, even if the Second Circuit were to disregard all of the above, Defendants still cannot moot Plaintiffs application based on the area of residence because Plaintiff challenged that provision. The Complaint asks the District Court to enjoin Defendants from scoring the residency requirement in a way that favors New York. (Compl. ¶¶16-20; Prayer for Relief 1.b.v. (JA 13-14, 20.) That would include enjoining Defendants from scoring Mr. Gay low because his poor census

27

tract is also in a poor county of Michigan, rather than in an affluent county like New York County. If plaintiff is successful with this challenge, the requirement and scoring method is stricken. Thus, Defendants cannot avoid this challenge by arguing for a circular loop where Plaintiff lacks standing to challenge an application scoring method because Plaintiff will not score high enough under the challenged scoring method.

### 3.    *Address at conviction*

Plaintiff has standing to challenge Defendants' use of the justice involved individuals' addresses of residence at the time of their convictions to discriminate against out-of-state applicants because Mr. Gay lived in Michigan. (Decl. Gay (JA 28).)

Applicants must provide proof of their justice involved individual's residence at the time of the individual's arrest or conviction. NYCRR § 116.4(a)(2)(ii). Plaintiff's Complaint alleges on information and belief that Defendants will score an applicant higher if the individual's residence was in New York. (Compl. ¶¶16-20; Prayer for Relief 1.b.v. (JA 13-14, 20.)) Notably, the criteria by which the Cannabis Law requires Defendants to evaluate the CAURD License applications includes whether the justice involved individual's housing "was provided by a public housing authority **in New York State or New York City**." NYCRR § 116.4(c)(2)(iii) (emphasis added).

The Preliminary Injunction states:

> Finally, the applicant must provide proof of the justice involved individual's residence at the time of his or her arrest or conviction, and the application evaluation criteria includes whether the justice involved individual lived-in housing provided by New York Public Housing Authority. See id. § 116.4(a), (c).

> Accordingly, the aforementioned application requirements, especially when considered in the aggregate, will have a discriminatory

28

effect on out-of-state residents seeking a CAURD license, and, thus, the heighten level of dormant commerce clause should be applied. *See Town of Southold*, 477 F.3d at 47; *see also NPG, LLC*, 2020 WL 4741913, at \*2.

(Preliminary Injunction at 19 (Docket 28).)

Defendants argue that Plaintiff does not have standing to challenge this Regulation because it is "speculative" that Defendants will use the information in a discriminatory manner. Defendants ignore that the Cannabis Law favors New York on its face, as quoted above. By providing points available to residents of New York housing authority, Defendants violate the dormant Commerce Clause. Defendants' counter argument is that they will ignore the directive of the Regulation. (See Brief at 31 n.7.) The power to fix Cannabis Regulations was granted by the Cannabis Law to the Cannabis Control Board, not to Defendants. Cannabis Law § 10.

**B.** **The Cannabis Laws Violate the Dormant Commerce Clause**

    **1.** ***The dormant Commerce Clause applies to state cannabis programs***

***First Circuit***. In the only case to reach a circuit on the question, the First Circuit affirmed the district court's conclusion that the dormant Commerce Clause applies to state cannabis regulations notwithstanding the Controlled Substances Act. *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022). A Maine state law required all officers and directors (defined broadly to include owners and managers) of medical cannabis dispensaries to be residents of Maine. *Id*. at 544. The State of Maine made the same argument Defendants make here: "The defendants . . . contend that the CSA ensures that the residency requirement does not run afoul of the dormant Commerce Clause simply because [the CSA], by making marijuana contraband, ensures that there is no interstate market in commerce for the residency requirement to burden." *Id*. at 547.

29

The First Circuit called the government's position "mistaken." *Id*. The Circuit noted that the Supreme Court determined in *Gonzales* (discussed below) that an interstate market for cannabis exists notwithstanding federal and state laws making cannabis illegal, and that the market is subject to Congress's Commerce Clause powers. *Id*. The Circuit noted that Maine's law encourages the interstate cannabis market because, while the law prohibits out of staters from selling cannabis, it does not prevent out of staters from purchasing cannabis when in Maine. *Id*. at 547. Moreover, Congress's passing of the Rohrabacher-Farr Amendment (which prevents the Department of Justice from spending funds to prosecute state-legal medical cannabis) shows that Congress contemplates an interstate market in cannabis that is free from criminal enforcement and subject to state regulation. *Id*. at 549.

The court then noted that the dormant Commerce Clause applies to state and local laws unless Congress "expressly state[s]" an intent to exclude the subject. *Id*. at 551. Congress's intent to exclude a subject from the dormant Commerce Clause must be "unmistakably clear." *Id*. That is not the case with cannabis because, "this is not a case in which Congress may be understood to have criminalized a national market with no expectation that an interstate market would continue to operate. Quite the opposite. Congress has taken affirmative steps to thwart efforts by federal law enforcement to shut down that very market, through the annual enactment of the Rohrabacher-Farr Amendment." *Id*. at 553. Moreover, "[n]othing on the face of the CSA purports to bless interstate discrimination in the market for medical marijuana. The CSA in that respect stands in stark contrast to notable instances of Congress blessing such interstate discrimination." *Id*. at 554.

"To conclude that Congress has consented to such protectionism [of in-state cannabis investment], we would have to do more than abandon the ordinary rule that Congress does not mean to consent to such measures unless it does so in unmistakably clear terms. We would have to adopt the presumption that Congress

30

does mean to consent to such measures whenever it makes participation in an interstate market a crime." *Id*. Thus, the First Circuit affirmed judgment for the plaintiffs. *Id*. at 558.

   ***Supreme Court***.  In *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court reversed the Ninth Circuit and held that Congress could regulate/prohibit local cultivation of cannabis for personal use under the Commerce Clause. In 2002, before California voters passed the Control, Regulate and Tax Adult Use of Marijuana Act in 2016, two California medical marijuana patients sought an injunction against the enforcement of the CSA as against local cultivation of cannabis for personal medical use.  *Id*. at 8.  The plaintiffs argued that the Commerce Clause did not allow Congress to regulate cannabis used in that manner.  *Id*.  The Northern District of California held that the plaintiffs had not demonstrated a likelihood of success for a preliminary injunction.  *Id*.  The Ninth Circuit reversed because the case involved intrastate, non-commercial cultivation and possession of cannabis for personal medical use, and the cannabis at issue would not enter the stream of commerce.  *Id*.

   The Supreme Court reversed the Ninth Circuit. Personal cultivation and use of cannabis falls within Congress's Commerce Clause powers because such local use "may have a substantial impact on the interstate market for this extraordinarily popular substance."  *Id*. at 28.

   ***Other district courts***. Other courts have applied the dormant Commerce Clause to state or local cannabis regulations. *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 990 (W.D. Mo. 2021); *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 813 (E.D. Mich. 2021); *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020); *Attitude Wellness, LLC v. Vill. of Pinckney*, No. 21-CV-12021, 2022 WL 1050305, at *4 (E.D. Mich. Apr. 7, 2022).

***Denying relief under the dormant Commerce Clause***. Plaintiffs are aware of only two cases where a court refused to apply the dormant Commerce Clause to cannabis regulations. In *Original Investments, LLC v. State*, 542 F. Supp. 3d 1230, 1232 (W.D. Okla. 2021), an out-of-state company challenged Oklahoma's law that allows out-of-staters to own no more than 25% of a cannabis business. The court dismissed the case because the court refused to use its equitable powers to facilitate conduct that is illegal under the CSA. *Id*. at 1233. *Original Investments* is distinguishable from the present case because an order from the District of Oklahoma would have allowed the plaintiff to purchase a cannabis business and violate the CSA, but in this case, an order from the Court enjoining licensing would prevent violations of the CSA. *Original Investments* was not appealed. It was, however, criticized by the First Circuit in *Northeast Patients Group*, which states, "we do not see how it would be equitable for us to leave a dormant Commerce Clause violation unremedied if such a violation has occurred." 45 F.4th at 557.

The second case is similar. In *Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, 2023 WL 1798173 (W.D. Wash. Feb. 7, 2023), the out-of-state plaintiff sought an injunction and declaration against a residency requirement so that he could purchase an existing cannabis business. That case is distinguishable because granting the requested relief would have facilitated a violation of the CSA by allowing the plaintiff to purchase an existing cannabis business. In this case, granting Plaintiff's requested relief would prevent violations of the CSA because Plaintiff seeks an injunction against cannabis licenses. *Brinkmeyer* was appealed but the plaintiff dismissed the appeal before it was briefed.

## 2.     *The law of the dormant Commerce Clause*

A court evaluates a dormant Commerce Clause challenge using a two-tiered analysis. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). ***At the first tier***, a court determines whether "a state statute directly

regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Id*. at 579.

**At the second tier**, absent such discrimination, if "a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

**3.** ***The Cannabis Laws and Cannabis Regulations fall within the first tier analysis***

The District Court concluded the Cannabis Laws and Cannabis Regulations fall into the first tier analysis because requirements of a conviction for cannabis in New York, a significant presence in New York, and address of residence at time of conviction "especially when considered in the aggregate, will have a discriminatory effect on out-of-state residents seeking a CAURD license, and, thus, the heighten level of dormant commerce clause should be applied." (Preliminary Injunction [ECF 28] at 18-19.)

If that were not enough, the Legislature's statements make it clear the Cannabis Laws have a discriminatory purpose. The New York Assembly website credits Majority Leader Crystal Peoples-Stokes with passing the Marijuana Regulation & Taxation Act that created the Cannabis Law and authorized the OCM to promulgate the Cannabis Regulations. (Plaintiffs' Supp. Request for Judicial Not. (JA 356) ("In March 2021, Peoples-Stokes … successfully pass[ed] The Marijuana Regulation & Taxation Act (MRTA), legalizing the adult use of cannabis … a bill and effort she had sponsored for eight years.").)

Assemblywoman Peoples-Stokes gave an interview in February 2022 in which she stated on video:

> … the legislation [State Senator Liz Krueger] and I passed is very intentional about equity … ***there are people in the business all across***

33

*the country, and there are a lot of them. I have probably met most of them, the big players. They have been in my office in Buffalo or they've been in my office in Albany. With all due respect to them—I respect their positions—but my intentions for this legislation was about the legacy market and New Yorkers. New York farmers, New York small crafters, New York chefs. New York people who want an opportunity to create a new job for themselves and their families*.

(Plaintiffs' Supp. Request for Judicial Not., (JA 357).)

She gave an interview in November 2021 in which she stated on video: We've kind of structured [the Cannabis Laws] in a way that hopefully will create a lot more equity businesses. *Here's the deal, at the end of the day, some large company is going to essentially be able to control this entire market. But we would like to see the initial startup be New Yorkers wanting to either start a business or already being in the business and wanting to grow their business around this space*.

(*Id*.)

Defendants' arguments that the Court should apply the second tier analysis are meritless. *Cannabis conviction in New York*. Defendants argue that this requirement does not favor New Yorkers because non-residents could be arrested while visiting New York. Defendants cannot credibly argue that a cannabis user who resides in Michigan has an equal chance of being convicted in New York as a cannabis user who resides in New York. Thus, this requirement discriminates against interstate commerce.[2]

---

[2] A law need not discriminate against interstate products to violate the dormant Commerce Clause. The first tier analysis is triggered if a law discriminates against any kind of economic interest, including out-of-state investment in local businesses. *See Tenn. Wine*, 139 S.Ct. at 2471; *C & A Carbone, Inc. v. Town of Clarkstown,* N.Y., 511 U.S. 383, 392 (1994); *Gonzales v. Raich*, 545 U.S. 1, 22 (2005); *NPG,* 2020 WL 4741913, at *9.

Defendant's intentional discrimination is further highlighted by their own arguments.  Defendants argue that a person who has never set foot in New York could qualify as a justice involved individual if their family member has a cannabis conviction in New York.  (Brief at 40.)  But the Cannabis Law awards fewer points to justice involved individuals who rely on their family member's conviction than it awards to justice involved individuals who were themselves convicted.  *See* 9 NYCRR § 116.4(c); (Supp. Decl. Barbot at ¶¶21-23 (JA 382)).  Thus, a justice involved individual who never visited New York cannot receive the maximum number of points available to justice involved individuals who reside in New York.

4.      ***The Cannabis Laws and Cannabis Regulations violate the dormant Commerce Clause under the first tier or second tier analysis***

***First tier analysis***.  In the first tier, courts "generally str[ike] down the statute without further inquiry." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2471 (2019). This includes striking down cannabis licensing laws with residency preferences or residency requirements because "State laws that discriminate against interstate commerce face 'a virtually per se rule of invalidity.'" *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) (quoting *South Dakota v. Wayfair, Inc.*, 138 S.Ct. 2080, 2091 (2018); *Lowe v. City of Detroit*, 544 F.Supp.3d 804, 812 (E.D. Mich. 2021) ("'[a] discriminatory law is virtually per se invalid ….'").

When a law falls into the first tier, the government bears the burden of proving the law "advance[s] a legitimate local purpose that ***cannot*** be adequately served by reasonable nondiscriminatory alternatives."  *NPG*, 2020 WL 4741913, at *11 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008).)  To Plaintiff's knowledge, no jurisdiction has successfully argued that a cannabis license residency requirement or preference meets this test.

In this case, Defendants have never—including in the current Brief—argued

the proper first tier standard. Assuming without conceding that benefitting people with New York cannabis convictions is a legitimate local purpose, Defendants have not shown that no other reasonable nondiscriminatory alternative exists. Although it is not Plaintiff's burden to show a nondiscriminatory alternative exists, Defendants could create job training programs, give tax breaks to persons with cannabis convictions, or reduce admission requirements or waive tuition for public higher education to people with cannabis convictions. As Defendants cannot show that no alternative exists that does not burden interstate commerce, the Cannabis Laws and Cannabis Regulations cannot survive the first tier analysis.

Other federal courts have struck down under the dormant Commerce Clause cannabis licensing laws that require or favor local residency. *See Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203, at *13 (1st Cir. Aug. 17, 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F.Supp.3d 985, 990 (W.D. Mo. 2021); *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F.Supp.3d 177 (D. Me. 2021); *Lowe*, 544 F.Supp.3d at 813; *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020).

***Second tier analysis***. Even under the second tier analysis, the Cannabis Laws fail. The Cannabis Laws place an undue burden on interstate commerce because, in practical effect, they make applicants from the majority of the country ineligible for Licenses.

***Significant presence in New York***. Defendants argue that the purpose of this requirement is to ensure cannabis retailers have sufficient ties to New York to be subject to enforcement proceedings there. This argument is nonsense. First, applicants were required to submit to New York jurisdiction as part of the CAURD License application process. (Application (JA 251).) Second, the CAURD License is to operate a physical store in the State. Defendants cannot credibly argue that a business operating a physical cannabis store is not subject to New York jurisdiction

36

for its cannabis activities in New York.

Defendants cite to an irrelevant argument from an amicus brief in *Tennessee Wine*. (Brief at 38 (citing Brief of Nat'l Alcohol Beverage Control Ass'n et al. as Amici Curiae at 17-19).) That amicus brief argues that out-of-state alcohol distributors should be required to have an in-state presence so they are subject to jurisdiction and collections if they violate laws when shipping liquor from out of the forum state into the forum state. That is irrelevant to this case because New York law does not allow cannabis to be shipped across state lines, and in any event, as noted above, CARUD Licenses are for physical stores in New York. Regardless, the Supreme Court rejected amicus curiae's argument and found residency requirements unconstitutional under the dormant Commerce Clause.

Defendants then argue that the significant presence in New York is crucial so that cannabis regulators follow laws and regulations. Defendants do not explain why applicants, particularly the individual with sole control, needs to have a significant presence in New York at the time of the application to ensure the physical store that will later open in New York will follow the laws. Further, the Supreme Court rejected this argument in *Tennessee Wine*, as noted above.

*Justice involved requirement*. This requirement is a thinly veiled program to ensure the majority of CAURD Licensees will be New York residents. Defendants even admit as much, though they phrase it as ameliorating prior harm. (Brief at 41.)

Defendants argue that the justice involved requirement does not place any burden on interstate commerce at all. (Brief at 42.) To be clear, this requirement would force businesses, like Plaintiff, to give up 51% and sole control of its business to an outsider. That would leave the existing shareholders to divide 49%, rather than 100%, and it would prevent the current majority shareholder, Mr. Gay, from exercising sole control over the business. That is a significant burden on interstate commerce.

*Address at time of conviction*. Defendants' only counter-argument is that

37

they will not use the addresses to discriminate against out-of-state applicants. Plaintiff's (and the district court's) bases for believing Defendants will do so are discussed above. Defendants do not argue that this requirement can survive the dormant Commerce Clause if the Court rejects their position that they will not discriminate against out-of-state applicants, notwithstanding the discussion above and the plain language of the Regulation to favor applicants with individuals who lived in housing provided by New York.

## II.    POINT II: PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT THE PRELIMINARY INJUNCTION

Plaintiff showed multiple irreparable harms from the CAURD License program. *First*, the district court found that Plaintiff showed irreparable harm because it is subject to a constitutional violation:

> "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. May 12, 2020) (citations omitted); *see Conn. Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury." (internal quotation marks and citations omitted)); *but see Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 141-42 (N.D.N.Y. Nov. 2021) (stating that "[a] court will presume that a plaintiff has established irreparable harm . . . if the claim involves the alleged deprivation of a constitutional right," but the plaintiff must also "convincingly" show that "the constitutional deprivation . . . carries noncompensable damages" (citations omitted)).

Because Variscite alleges harm of a constitutional nature, such harm is deemed irreparable. *See Conn. Dep't of Envtl. Prot.*, 356 F.3d

at 231.

(Preliminary Injunction (Docket 28).)

Because Plaintiff has shown a likelihood that the CAURD License program violates the dormant Commerce Clause, Plaintiff has shown irreparable harm. *See also Gallagher v. N.Y. State Bd. of Elections*, 477 F.Supp.3d 19, 41 (S.D.N.Y. 2020).

***Second***, aside from the constitutional violation, Plaintiff will suffer the irreparable harm of being excluded from the New York storefront retail cannabis market unless the Court issues a preliminary injunction. The district court stated:

> Variscite has also demonstrated, beyond the fact that the harm is of a constitutional dimension, that it faces irreparable financial harm should their CAURD application be denied, due to their risk of being excluded, to some degree, from the market. *See Lowe*, 544 F. Supp. 3d at 816 ("[P]laintiff has demonstrated that she will suffer irreparable injury absent an injunction, as she would, at best, be significantly disadvantaged in applying for a recreational marijuana retail license . . . and, at worst, be entirely eliminated from consideration for such a license."); *see also Finch*, 2022 WL 2073572, at *16 ("If the court declined to grant injunctive relief as to the [cannabis licensing scheme] . . . [p]laintiffs' chances of obtaining [such] licenses will be statistically narrowed."). Accordingly, Variscite has demonstrated irreparable harm.

(Preliminary Injunction (Docket 28).)

***Third***, even if Plaintiff could somehow later enter the market, the delay in entering the market constitutes an irreparable harm. All advantages to early entrants in the market, such as access to customers who have not developed loyalty to other business, will have been claimed. See *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) ("I agree that the unique context of this new market suggests that the timing of a ruling in the

Plaintiffs' favor is particularly important. The Plaintiffs are not seeking to enter an established [cannabis] market, where the significance of any further delay of their participation is likely diminished. Rather, the Plaintiffs are seeking to be in the first wave of [cannabis] licensees as a new market launches and are hoping to attract customers who have not yet developed allegiances."); *Quezada v. BP Prods. N. Am., Inc.*, No. 06 CV 5378 (SJ), 2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006) (temporary inability to sell goods is irreparable harm of loss of good will); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997) ("While it is true that injunctive relief is generally inappropriate where money damages can make a plaintiff whole, we have recognized that the loss of a unique or fleeting business opportunity can constitute irreparable injury."); *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005) ("[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'"); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872–73 (7th Cir. 2009) ("The district court concluded that the harm to Pro's was irreparable because it was difficult to ascertain the specific amount of revenue being lost, and because damages might come too late to adequately compensate the plaintiff's business.").

## III.  POINT III: THE REMAINING EQUITABLE FACTORS FAVOR A PRELIMINARY INJUNCTION

The balance of equities favors Plaintiff.  No applicant spent any money on the application, beyond the application fee itself.  Applicants were not required to lease

or purchase a property for their business before the CAURD Application Program, and in fact, the State will require selected applicants to lease their business premises from Defendants.  Cannabis Regulations § 116.7(c)(6).

Moreover, even if the applicants had ongoing costs while the preliminary injunction is in place, "any such economic harm would be the result of these [cannabis license] applicants investing money before obtaining a license, which they did at their own risk."  *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021).

In addition, the public interest favors an injunction.  "[T]he public interest is best served by enjoining the enforcement of [a cannabis licensing] ordinance that is likely unconstitutional."  *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021).  As the district court found in the Preliminary Injunction:

> The final factor, whether the public interest will be served by granting the injunction, also weighs in Variscite's favor, as "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *see Lowe*, 544 F. Supp. 3d at 816 ("[T]he public interest is best served by enjoining the enforcement of an ordinance that is likely unconstitutional.").  Accordingly, Variscite has met the standard for the issuance of a preliminary injunction, and the court grants its motion.

(Preliminary Injunction (Docket 28).)

The public interest is further served by protection of interstate participation in a cannabis market.  See *Toigo*, 549 F. Supp. 3d at 996 ("The public interest is best served by the protection of [an applicant's] constitutional right to fully participate in the medical marijuana business in Missouri on the same footing as a Missouri resident, a right that is likely being violated by the State's durational residency requirement.").

41

After this Court narrowed the Preliminary Injunction to cover only the Finger Lakes geographic area, the Preliminary Injunction affects only 18 of the 300 available licenses for taxpaying applicants. Additional licenses have been granted to nonprofit applicants, which are not the subject of the Preliminary Injunction. Thus, the "harm" to defendants is that they are prohibited from issuing 6% of the Licenses under their unconstitutional program, and have freely issued 94% of the licenses despite their knowing violation of the Constitution, and that does not include the licenses they issued to nonprofit applicants.

Defendants argue that the applicants suffer harm because they are owned by individuals with cannabis convictions, and those owners are therefore unable to find other employment. (Brief at 49.) But a condition of owing a CAURD Applicant is that the individual with a cannabis conviction must own a business that was profitable for at least two years. 9 NYCRR § 116.4(a)(2)(c)(iii).

Defendants' arguments about purported harm to cannabis cultivators (farmers), for which Defendants never provided any evidence whatsoever, is irrelevant now that the injunction has been narrowed to apply to only 18 of 300 licenses, and additional licenses are available to nonprofit applicants.

## IV.    POINT IV: NARROWING THE PRELIMINARY INJUNCTION

The Court has already ruled on this request.

## CONCLUSION

For the reasons set forth above, Plaintiff asks the Court to affirm the Preliminary Injunction as narrowed by this Court's earlier ruling on the Motion to Modify.

Dated:     May 3, 2023

                                    Respectfully submitted,

                                    **KERNKAMP LAW, APC**

                            By:    */s/ Christian E. Kernkamp*
                                      Christian E. Kernkamp, Esq.
                                      New York Reg. No.: 5721923
                                      *Attorney for Plaintiff – Lead Counsel*
                                      1801 Century Park E. 24 Fl.
                                      Los Angeles, CA 90067
                                      (213) 214-3030
                                      Email: ck@kernkamplaw.com

43

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Christian E. Kernkamp hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 11595 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).

/s/ Christian E. Kernkamp
Christian E. Kernkamp